United States District Court
For The Southern District Of Indiana
Indianapolis Division

Carlton Wright
(Plaintiff)

vs. Case No: 1:23-cv-00459-TWP-MKK

Shane Nelson, et al
(Defendants)

Plaintiff's Designation Of Evidence
In Opposition of Summary Judgement

The Plaintiff, Carlton Wright, a pro-se litigant, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby designate the following pleadings and evidence in support of the Plaintiff's Opposition of Summary Judgement.

1. Exhibit A: It's the "Case Notes 2" (of offender Carlton Wright #208902/The Plaintiff) that are personally entered into the offender Case Management System by the Case Mang. or either the Unit Team Mang at NCCF, that are specifically pertaining to the offender; and it includes the CM./staff member's name of whom it was prepared/entered by, and the date it was entered on. Inside each of the seperate boxes

it includes a summary description of what happened as it pertains to the offender's name listed on the Case Notes 2.

2. Exhibit B: It's the "offender's bed move housing assignment location history" at NCCF, and it shows exactly what cell location the offender was placed in, along with the corresponding date the move transpired on to that cell location. Also, the reason for the offender's move, and also, the name of the staff member who "authorized" the offenders move with the exact date. For example: (Line #5) offender Carlton Wright was moved on 6-01-21 to the housing location/cell location of M1-114A, and the reason for the move, was the UTM (Unit Team Mang) decision, and it was authorized by Nelson (Mr. Nelson).

3. Exhibit C: An Entry of some sort by CM Jama Jones on April 9, 2021, referring to when the plaintiff refused housing (refused to remain in the same cell as ofd: Dorsey) back on the date of April 5, 2021; and the plaintiff got moved to Pod 2 on night shift (by Sgt. Turley).

4. Exhibit D: The Disciplinary Conduct Report that the plaintiff received for the (assault) fight he had with ofd: Dorsey on June 2, 2021 on the rec pod.

5. Exhibit E: A handwritten letter from Jama Jones (CM) to offender Wright (the plaintiff) written on April 12, 2021; (CM) Jones acknowledging that the plaintiff is having "issues" on other Pods (Pod one)... this is similiar to Exhibit C, but the handwritten/signed version from (CM) Jones to the plaintiff

6. Exhibit F: "offender Job Description Contract", the job that the Plaintiff held as the Program Aide/Mentor when the plaintiff lived in O-unit (The Annex).

7. Exhibit G: A copy of all the classes that the Plaintiff personally taught, and participated in as a Aide/Mentor, while living in O-unit; and Mr. Nelson signing off on them. * Please Excuse the handwritting on there, thats old. from when I wrote on there and sent it to the grievance office *.

8. Exhibit H: Institutional Behavior History of the Plaintiff.

9. Exhibit I: Copy of grievance # 122186 by Plaintiff (2pgs).

10. Exhibit J: Affidavit by offender Kyle Brown (2pgs)

11. Exhibit K: Mr. Shane Nelson's (UTM) "Response To Plaintiff's First Set of Interrogatories To Defendant, under penalties of perjury (11 pgs)

12. Exhibit L: Officer Dunlap's "Response To Plaintiff's First set of Interrogatories To Defendant, under penalties of perjury. (10 pgs) (10 pgs)

13. Exhibit M: Lieutenant ("Lt.) Krul" Response To Plaintiff's First set of Interrogatories To Defendant, under penalties of perjury. (8 pgs) (8 pgs)

14. Exhibit N: "Report of Disciplinary Hearing Video Evidence Review", regarding the assault of Plaintiff by ofc. Dorsey, and how long it transpired.

15. Exhibit O: Offender grievance # 126759 by the Plaintiff.

16. Exhibit P: offender grievance # 130296 by the Plaintiff.

17. Exhibit Q: "offender grievance Respone Report" case log/grievance # 128906 by the Plaintiff.

18. Exhibit R: "offender grievance Response Report" case log/grievance # 130296 by the Plaintiff
19. Exhibit S: "Case Notes 2" for offender Carlton Wright (The Plaintiff); Entry # 1; and Entry # 2.
20. Exhibit T: Letter/request slip written by the plaintiff, to (Glenda) Cecil, head of Classification at NCCF, and Cecil's response to Plaintiff (top half on applicable)
21. Exhibit U: The policy administrative procedures, for "The Use and Operation of Protective Custody".
22. Exhibit V: New Castle Correctional Facility Policy and Procedure Manual. Chapter: Special Mang offenders. Title: Restrictive Housing Units... (4 pgs)
23: Exhibit W: "Notice To Lay Advocate/Witness". This is a witness statement from Lieutenant (Lt) Outlaw regarding the plaintiff. The plaintiff received a disciplinary conduct report, on or around February 2, 2022 for "refusing an (bed/housing) assignment, related to being back housed around ofd: Dorsey again. The plaintiff requested this witness statement from Lt. Outlaw.
24. Exhibit X: "Medical Report on Injuries/Non Injuries". A Nurse physical examination/assessment of the plaintiff on June 2, 2021; immediately following the assault by ofd. Dorsey on the Plaintiff.
25. Exhibit # 20: Mental Health Report of the Plaintiff.
26 Exhibit # 21: Dr./Nurse Visit of the Plaintiff
27. Exhibit # 22: Dr. Visit of the Plaintiff
28 Exhibit # 23: Dr/Nurse Visit of the Plaintiff
29. Exhibit # 42: Mental Health Report of the Plaintiff

30. Exhibit # 43: Mental Health Report of the Plaintiff
31. Exhibit # 44: Mental Health Report of the Plaintiff
32. Exhibit # 45: Mental Health Report of the Plaintiff
33. Exhibit # 46: Mental Health Report of the Plaintiff
34. Exhibit # 47: Mental Health Report of the Plaintiff.
35. Exhibit # 48: Mental Health Report of the Plaintiff.
36. Exhibit Y: offender grievance # 125710 by the Plaintiff.
37. Exhibit Z: offender grievance, dated April 8, 2021
38. Exhibit # 1: Officer Myers' "Response To Plaintiff's First Set of Interrogatories To Defendant, under penalties of perjury (6 pgs).
39. Exhibit # 3: Offender Grievance; grievance # 128903, dated June 8, 2021; and grievance # 128906 (2 pgs)
40. Exhibit # 4: Affadavit of the Plaintiff, Carlton Wright (21 pgs)

Respectfully Submitted,

By: Carlton Wright
208902
Pendleton Corr. Fac.
4490 W. Reformatory Rd.
Pendleton, I.N. 46064

# Certificate of Service

I hereby certify that on the 22nd day of May 2025, I (the plaintiff) mailed the foregoing Designation of Evidence with the clerk of the Courts using the U.S. postal mail service. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Further, I hereby certify that I have (thru the clerk of the Courts assistance) provided a copy of the foregoing to the following thru the ECF participant, on this 22nd day of May 2025.

Joseph T. Lipps, Atty. No. 35936-89
BBFCS Attorneys
27 North 8th Street
Richmond, I.N. 47374

United States District Court
For The Southern District of Indiana
Indianapolis Division

Carlton Wright
(Plaintiff)

vs.

Shane Nelson, et al
(Defendants)

Case No:
1:23-cv-00459-TWP-MKK

# Affidavit of Carlton Wright

Having been duly sworn upon his oath, Carlton Wright declares, pursuant to 28 U.S.C. 1746, as follows, under the penalties of perjury:

1. I am over the age of twenty-one (21) and am competent to testify to all of the matters herein, and based my statements below on my personal Knowledge, actions taken, and a review of records I create, maintain, and utilize as a part of my involvement in the above Case number, as further described below.

2. I am the same Carlton Wright, as the same Carlton Wright thats named and identified as the Plaintiff in this case.

3. I was an offender at the New Castle Correctional Facility (hereinafter "NCCF"), located in New Castle, Henry County, Indiana, at all relevant times to the Plaintiff's Complaint.

4. I lived, and was housed in the Annex Building at NCCF, at all times relevant to the Plaintiff's Complaint.

5. The Annex Building is made up of only two housing units; those two housing units are, O-unit, and M-unit. O-unit is the general population unit, and M-unit is to house the Protective Custody offenders.

6. Pod/Range Three in O-unit, is the segregation housing unit for the Annex offenders.

7. On June 2, 2021 immediately following the assault on the Plaintiff by ofd. Dorsey. The

Plaintiff was placed in segregation in cell 03-214 A, which was authorized by Lieutenant (hereinafter "Lt") Krul; Please refer to Exhibit B Line #3. Glenda Cecil (defendant Cecil) who is the head of the classification dept. at NCCF, also had an input in cell assignment of the Plaintiff into cell 03-214 A.

8. Glenda Cecil as the head of the classification dept. had the authority to deny, or refuse the Plaintiff's housing assignment into cell 03-214 A, if there were any "red flags" regarding this cell placement.

9. When the Plaintiff was moved into cell 03-214 A on June 2, 2021; ofd. Brooks was already living in cell 03-215 A, directly next door.

10. While the Plaintiff was being housed directly next door to ofd. Brooks in segregation, from the Plaintiff's initiall day of his arrival, until the moment that he left segregation, the Plaintiff's classification status, was a "Protective Custody" offender.

11. The entire time that the Plaintiff was being housed directly next door to ofd. Brooks in segregation in cell 03-214 A, ofd. Brooks classification status, was a "Non" Protective Custody (general population) offender; and ofd. Brooks lived in the O-unit side of the Annex with general population offenders, prior to going to segregation.

12. Glenda Cecil, Captain Gard, Lt. Krol, Sergeant Lee, and Unit Team Manager Mr. (Shane) Nelson, are all very aware, and completly Knowledgable of the Plaintiff's classification status, as well as ofd. Brooks classification status; prior to the Plaintiff being placed into cell 03-214 A, and, thro out the Plaintiff's entire stay in segregation.

13. Being on Protective Custody, and/or the definition of "protective custody", is, " A form of physical seperation from the general offender population for offenders requesting or requiring protection from other offenders. Please refer

to Exhibit U, Catergory III (Definitions) letter A. (Exhibit U)

14. The sole and entire main purpose of even being on (granted/given) Protective Custody status in the first place; is to be Kept seperate, and away from all general population ("non P.C") offenders, because general population offenders pose a threat, or potential harm to protective custody offenders.

15. Protective Custody offenders, and "non" protective custody (general population) offenders, aren't suppose to ever, never have any interaction with one another; per policy and administrative procedures.

16. Prior to the Plaintiff being moved over to M-unit (Protective Custody) in November 2020. The Plaintiff previously lived in O-unit (the other side of the Annex).

17. The Plaintiff was placed on Protective Custody and sent to M-unit, due to the Plaintiff having and receiving threats of harm, hurt, and even death

on his life from offenders in O-unit, when the Plaintiff lived in O-unit.

18. Mr. Nelson as the Unit Team Manager (of both O and M-unit), is absolotely aware of the many death threats and harm on the Plaintiff; because Mr. Nelson, is the individual (one of them) who personally recommended for the Plaintiff to receive, and be placed in M-unit Protective Custody in mid 2020.

19. Mr. Nelson made the recommendation for the Plaintiff to be placed in M-unit, prior to the Plaintiff actually being moved to M-unit in November 2020, and the Plaintiff eventually "bumping heads" with Case Manager (defendant) Jama Jones, and then subsequently creating a contentous relationship with Mr. Nelson too.

20. Prior to the Plaintiff being moved to M-unit for safety and protection purposes; the Plaintiff previously held an offender job position in O-unit, as a Program Aide / Mentor for O-unit offenders; who worked for Mr. Nelson. Please

refer to Exhibit F, and Exhibit, G Mr. Nelson was the Plaintiff's supervisor when the Plaintiff was the Mentor in O-unit.

21. Lt. Krul (sometimes written / spelled "Krohl"), is a lieutenant in the Annex Building at NCCF, and he is authorized to work (and does work) in both housing units (O and M-unit) as the lieutenant, officer.

22. Capt Gard is a Captain in the Annex Building at NCCF, and he is authorized to work (and does work) in both housing units (O and M-unit) as the Captain, officer.

23. Sergeant Lee is a Sgt in the O-unit of the Annex Building, and Sgt. Lee was (defendant) ofc. Foley's supervisor in O-unit on the day that the Plaintiff was assaulted by ofc. Brooks in segregation.

24. Prior to, and before the Plaintiff being assaulted by ofc. Brooks on June 24, 2021 while in segregation. The Plaintiff did indeed notify, inform, and make Cpt. Gard fully aware on multiple occassions

that he (the plaintiff) had been threathen by ofd. Brooks, and that he (the plaintiff) was in fear, and felt in danger being housed directly next door to ofd. Brooks.

25. On one occassion, Cpt. Gard even heard ofd. Brooks threathen to harm the Plaintiff the first chance he got.

26. The Plaintiff asked Cpt. Gard could he be moved to an alternative cell in segregation away from ofd. Brooks; due to the plaintiff's fear of ofd. Brooks; Capt Gard refused to do so.

27 Prior to, and before the Plaintiff being assaulted by ofd. Brooks on June 24, 2021 while in segregation. The Plaintiff did indeed notify, inform, and make Sergeant Lee fully aware on multiple occassions that he (the plaintiff) had been threathen by ofd. Brooks, and that he (the plaintiff) was in fear, and felt in danger being housed directly next door to ofd. Brooks.

28. On one occassion, while ofd. Brooks was being escorted to the shower by Sgt. Lee,

ofd: Brooks violently cursed at, and threathen to harm the Plaintiff, and then hog spit on the Plaintiff's cell door window; all of this was done in front of Sgt. Lee.

29. The Plaintiff asked Could Sgt. Lee move him (the Plaintiff) to an alternative cell in segregation away from ofd: Brooks; Sgt. Lee refused to do so.

30. Prior to, and before the Plaintiff being assaulted by ofd: Brooks on June 24, 2021 while in segregation. The Plaintiff did indeed notify, inform, and make Lt. Krul fully aware on multiple occassions that he (the Plaintiff) had been threathen by ofd: Brooks, and that he (the Plaintiff) was in fear, and felt in danger being housed directly next door to ofd: Brooks.

31. The Plaintiff asked Lt. Krul could he be moved to an alternative cell in segregation away from ofd: Brooks; due to the Plaintiff's fear of ofd: Brooks; Lt. Krul refused to do so.

32. Prior to, and before the Plaintiff being assaulted by ofd. Brooks on June 24, 2021 while in segregation. The Plaintiff did indeed notify, inform, and make Mr. Nelson fully aware on multiple occassions that he (the Plaintiff) had been threathen by ofd. Brooks, and that he (the Plaintiff) was in fear, and felt in danger being housed directly next door to ofd. Brooks. Mr. Nelson just laughed at the Plaintiff.

33. The Plaintiff asked Mr. Nelson could he be moved to an alternative cell in segregation away from ofd. Brooks; due to the Plaintiff's fear of ofd. Brooks; Mr. Nelson refused to do so.

34. Sgt. Lee and Capt. Gard were both working in O-Unit, Supervising over the ségregation Pod on the day that the Plaintiff was assaulted by ofd. Brooks.

35. Earlier in the day before the actual assault on the Plaintiff transpired by ofd. Brooks. Capt. Gard and Sgt. Lee both went to ofd. Brooks cell door personally, and they

saw and observed ofd: Brooks holding his cuff port "hostage" (or either referred to, as a "cuff port situation")

36. Capt Gard and Sgt. Lee both just walked away from ofd. Brooks cell door, and neither did anything according to policy, in an attemp to try to regain control, and secure and shut ofd. Brook's food slot.

37. By ofd: Brooks having his food slot held "hostage", ofd: Brooks posed a serious threat to other offenders, as well as to staff too.

38. Sgt Lee and Capt. Gard allowed for ofc: Foley to remove the Plaintiff from his cell (directly next door to ofd: Brooks cell door), when both Sgt Lee and Capt. Gard were fully aware that ofd. Brooks still had his food slot held "hostage" (Sgt. Lee and Capt. Gard are the ones who had the Key to lock back/secure ofd: Brooks open food slot, and when they both walked away earlier, neither one of them ever secured his open food slot).

39. The Plaintiff was being removed from his cell, due to it being the Plaintiff's rec/shower time, and if the Plaintiff denied/refused his rec/shower time, then the Plaintiff wouldn't have another opportunity for rec/shower again for another couple days.

40. The Plaintiff walked and went the opposite way from ofd. Brooks, as to attempt avoid any possibility of ofd. Brooks doing anything to the Plaintiff.

41. Nevertheless thoo', while the Plaintiff was walking down the stairs being escorted by ofc. Foley; ofd Brooks assaulted the Plaintiff with a weapon, via (his) bodily fluids.

42. According to the offender's disciplinary conduct handbook, when an offender throws their bodily fluids on another offender; that is considered to be, "an assault with a weapon", which is a conduct code, A-102. An "A-102", is the second highest conduct disciplinary

write up that an offender can receive.

43. However tho', ofd. Brooks did not receive a conduct report for assaulting the plaintiff with a weapon.

44. Yes, the Plaintiff was indeed assaulted by ofd. Brooks on June 24, 2021; and this assault on the plaintiff was recorded and captured on the Pod Three segregation camera on the housing unit.

45. The Plaintiff filed a grievance regarding the assault on him by ofd. Brooks. The grievance/case log # is 130296 regarding that incident. Please ~~refer~~ refer to Exhibit P

46. In the aforementioned grievance, the plaintiff requested for the camera footage of the assault on him by ofd. Brooks, to be preserved. Please refer to Exhibit. P

47. In the "Offender Grievance Response Report" (case log # 130296) by the grievance specialist, Hannah

Winningham. Winningham response to the Plaintiff regarding the assault on him by ofd. Brooks was, "per custody supervisors policy and procedures was followed. I have requested the camera footage to be saved that you asked for in your grievance". Thus, Winningham acknowledging, that the Plaintiff did indeed get assaulted, and have bodily fluids thrown on him by ofd. Brooks, on camera. Please refer to Exhibit, R

48. The Plaintiff never received a shower on the day that he was assaulted by ofd. Brooks. The Plaintiff didn't receive a shower during his rec/shower time, due to the Plaintiff being assaulted enroute; and once the Plaintiff got assaulted, ofc. Foley made the Plaintiff return back to his cell; and the Plaintiff never eventually got one (a shower) once he was locked back inside his cell.

49. Per policy, whenever an offender is assaulted with bodily fluids, which is considered, a "bio hazard"; that offender is automatically

Suppose to receive a shower promptly after the assault occurred on them. So that the assaulted victim may be able to properly clean themselfs of the filth, and dangerous "bio-hazard" of the (feces, urine, etc) bodily fluids. Inspite of the Plaintiff being visably covered in ofd. Brooks bodily fluids, ofc. Foley refused the Plaintiff a shower. The Plaintiff did not receive a shower until a couple days later on the Plaintiff's next rec/shower day.

50. The bodily fluids of ofd. Brooks that the Plaintiff was assaulted with, got all in the Plaintiff's eyes, mouth, nose, ears, and long hair.

51. Per policy and administrative procedures, whenever an offender is assaulted with bodily fluids; the offender who has been assaulted, is suppose to receive a shower promptly, pictures are suppose to be taken (as to preserve any evidence), and are suppose to be taken promptly to medical in order to assess, and documents any injuries that may have been sustained; the same way, and procedures that

were followed, when the plaintiff was assaulted by ofd. Dorsey on June 2, 2021.

52. None, not a single one of the aforementioned policy and procedures were followed after the Plaintiff was assaulted by ofd. Brooks on June 24, 2021.

53. Capt. Gard and Sgt. Lee were both made aware that the Plaintiff had been assaulted by ofd. Brooks, and as the two supervisors of the segregation unit, as well as ofc. Foley, neither one of them made sure that any of the policy and procedures were followed and carried out either.

54. However thou', after ofd. Brooks assaulted the Plaintiff, ofd. Brooks was allowed, and given a shower that day by Sgt. Lee.

55. According to the New Castle Corr. Fac. Policy and Procedure Manual, under "Definitions", 3.1; a "Cuff Port Situation" (also referred to as "held hostage"),

"occurs when an offender refuses to remove any appendage from the cuff port (also referred to as a "food slot") when directed. Please refer to Exhibit V pg 1 of 4. Please also see (on the same page) 3.4.1 "Safety risk", Exposure; which is, "being exposed to bodily fluids or any unknown substances that have the potential to be hazardous to staff or other offenders".

56. A "cuff port situations" is, "whenever an offender refuses to remove an appendage from the cuff port, at no point should an officer try to force the offender to remove the appendage. After verbal direction, if the offender continues to refuse to move, the officers backs away and notifies the supervisor. If verbal directives continue to be ineffective, permission to use chemical agents should be requested. Please refer to Exhibit V pg 2 of 4, under 4.6 "Cuff Port Situations".

57. "An offender shall be identified as posing a safety risk, when through verbal communication and/or physical actions, they threaten to harm staff, other offenders or themselves."

"Any supervisor shall have the authority to identify an offender as posing a safety risk. An offender shall be identified as posing a safety risk by placing a warning sign on the outside of the door". Please refer to Exhibit V pg 3 of 4, under 4.2 "Identification"

58. "Each time interactions occurs with an offender posing a safety risk, the captain/lieutenant of the unit should be notified verbally if on shift. All interactions with offenders posing a safety risk shall be documented in writing via the shift report. Any time interaction occurs resulting in an injury, the captain/lieutenant of the shift and of the unit should be verbally notified immediately and an incident report should be completed by the end of shift." Please refer to Exhibit V pg 4 of 4, under 4.10 "Notification".

59. Even after the Plaintiff was assaulted by ofd. Brooks with a weapon (via bodily fluids), ~~and~~ on June 24, 2021; and Nelson, Cpt. Gard, Lt. Krul, and Sgt. Lee

were all Knowledgable that this assault occurred on the Plaintiff. None of the aforementioned defendants still would not move the Plaintiff to a different cell location in segregation; but rather made the Plaintiff remain housed directly next door to ofd. Brooks until the day the Plaintiff left segregation.

60. For the entire time that the Plaintiff was being housed next door to ofd. Brooks in segregation; the Plaintiff had to endure constantly being verbally harassed by ofd. Brooks, and having ofd. Brooks kicking, banging, and yelling on the Plaintiff's cell wall all hours of the day and night. Disturbing, and preventing the Plaintiff from sleeping, and disrupting his sanity.

61. After the Plaintiff was assaulted by ofd. Brooks, once the Plaintiff was released from segregation, the Plaintiff filed a seperatee on ofd. Brooks.

62. The Plaintiff has another federal pending case (case 1:23-cv-01362-SEB-KMB) against the same defendant Shane Nelson, and defendant Lieutenant Krul, as involved in this current case as defendants as well.

63. In the plaintiff's other federal pending case (case 1:23-cv-01362-SEB-KMB), def. Nelson, and def Lt. Krul Constitutional violations (that are still pending) against the Plaintiff, are dealing with the retalitorial (alleged) behavor on the plaintiff, directly after the plaintiff left segregation and had been assaulted by ofd. Brooks.

64. Prior to the Plaintiff having been attacked and assaulted by ofd. Dorsey for thirty-seven minutes on the rec pad, on the date of June 2, 2021. The Plaintiff did indeed personally make Mr. Nelson fully aware on multiple occassions that he was afraid, in fear, and felt in danger about being housed around ofd. Dorsey. The Plaintiff also made defendant (Case Manager) Jama Jones aware of his fears of ofd. Dorsey as well too.

Exhibit # 4

# Declaration.

I, Carlton Wright, a prisoner in the Indiana Department of Corrections at Pendleton Corr. Fac; am making this Affidavit/Declaration in support of the Plaintiff's Memorandum of Law in Opposition of Summary of Judgement under Fed. Civ. R 56, pursuant to 28 U.S.C. 1746, declaring personal Knowledge herein and under the penalties of perjury that all of the aforementioned statements by the Plaintiff were true and correct.

1. I am not under any legal disability or infirmity which would render me incompetent to testify as to any matters set forth herein.
2. I provide this Declaration freely and voluntarily, without coercion of any Kind, as my affirmation to appear and testify at my any hearing or trial. I will state all of the aforementioned in support thereof.
3. Pursuant to 28 U.S.C 1746, I declare under penalty of perjury that the aforementioned is true and correct.

Dated this 22 day of May, 2025

Respectfully Submitted,

Carlton Wright #208902
(Plaintiff, pro-se)

Pendleton Corr. Fac
4490 W. Reformatory Rd.
Pendleton, I.N. 46064

Carlton Wright

Exhibit #4

Indiana Department of Correction
Offender Case Management System

Case Notes 2

Exhibit A #9

**208902** **Wright, Carlton**

**For Date Range: 01-FEB-11 through 11-AUG-21**

Activity Date: 04-MAR-21 Time: Place:

Note Type: General
RAP Need:

Following a 30-day Protective Custody review (2/16/2021), Offender Wright will be recommended to remain as Protective Custody status.

Prepared By: *Wesley Clark*
Date/time Prepared: *04-MAR-21 07:38 AM*

---

Activity Date: 31-MAR-21 Time: Place:

Note Type: General
RAP Need:

Following a 30-day Protective Custody review on 3/16/2021, offender will be recommended to remain as Protective Custody status. It has been determined that the need for Protective Custody still exists/must be further investigated.

Offender refused to sign the form.

Prepared By: *Wesley Clark*
Date/time Prepared: *31-MAR-21 12:38 PM*

---

Activity Date: 05-APR-21 Time: 9:50AM Place: M1-NCN

Note Type: General
RAP Need:

On this date offender Wright refused housing. A bed move was issued by unit team staff and the Count Office approved for Ofd Wright to move to M1-113. This move was issued to accomodate facility intakes arriving on this date.

Prepared By: *Wesley Clark*
Date/time Prepared: *05-APR-21 01:51 PM*

---

Activity Date: 05-APR-21 Time: Place:

Note Type: General
RAP Need:

Entry #4

While moving from M1-206 to M1-116 Offender Wright told Ofc. Foley that he was in fear for his life being moved in to cell M1-116. Ofc. Foley placed Ofd. Wright into the range 1 shower for safe keeping until Lt. Krul could be contacted to advise on the situation. Ofc. Foley came to the Case manager office in M-Unit to advise CM Clark and CM Jones of the situation. Ofc. Foley was advised to that he had done the right thing placing Ofd. Wright in the shower while awaiting Lt. Krul's assistance and advise on the situation.

Prepared By: *Wesley Clark*

Exhibit A

Indiana Department of Correction
Offender Case Management System

# Case Notes 2

**208902** **Wright, Carlton**

**For Date Range: 01-FEB-11 through 11-AUG-21**

Activity Date: 18-NOV-20 Time: Place:

Note Type: General

RAP Need:

On 11/18/2020, the RHU Multi-Disciplinary Review Committee met and reviewed the status of Offender Wright. The decision was made for the offender to remain in RHU while pending transfer to PC. The transfer was submitted on 10/14/20. Due to the offender being in RHU for over 30 days, the RHU Multi-Disciplinary Review Committee has determined this offender remain in RHU and be considered Special Management.

Prepared By: *Christopher Bookout*

Date/time Prepared: *18-NOV-20 12:58 PM*

---

Activity Date: 15-DEC-20 Time: Place:

Note Type: General

RAP Need:

Offender Wright transferred from NCN-TU to NCN-PC. There are no significant changes to report at this time. Offender is applying for programming and seems to be adjusting to PC environment.

Prepared By: *Jama Jones*

Date/time Prepared: *15-DEC-20 12:55 PM*

---

Activity Date: 21-DEC-20 Time: Place:

Note Type: General

RAP Need:

Following a 30-day Protective Custody review (12/21/2020), Offender Wright will be recommended to remain as Protective Custody status.
Due to Covid-19 protocol offender was unable to sign. Note was late being entered into OCMS due to staffing shortages.

Prepared By: *Wesley Clark*

Date/time Prepared: *09-MAR-21 12:55 PM*

---

Activity Date: 02-FEB-21 Time: Place:

Note Type: General

RAP Need:

Following a 30-day Protective Custody review (1/20/2021), Offender Wright will be recommended to remain as Protective Custody status.

Prepared By: *Wesley Clark*

Date/time Prepared: *02-FEB-21 09:58 AM*

---

Tuesday, January 25, 2022

OIFILOC2 * INQUIRY * OFFENDER INFORMATION SYSTEM 01/25/22 10:03:39
PAGE 01 LOCATION HISTORY - BEDS USER: WVCI43 STEP MODE

DOC NUMBER: 208902 NAME: WRIGHT, CARLTON LOC: NCN

| | MOVE DATE | MOVE TIME | LOC | HOUSING | REASON FOR MOVE | AUTHORIZED BY LAST | F | M |
|---|---|---|---|---|---|---|---|---|
| | 01 24 2022 | 1421 | NCN | M M3 209A | UTM MOVE.TP | PAGE | M | |
| line 3 | 06 29 2021 | 1147 | NCN | M M1 113A | UTM DEC.TP | NELSON | S | |
| | 06 02 2021 | 1627 | NCN | O O3 214A | CUST.DEC.JK | KRUHL | M | |
| line 5 - | 06 01 2021 | 1509 | NCN | M M1 114A | UTM DEC.TP | NELSON | S | |
| line 6 - | 05 27 2021 | 1516 | NCN | M M1 212A | UTM DEC.TP | NELSON | S | |
| line 1 - | 04 05 2021 | 1929 | NCN | M M2 206A | CUST DEC/NO | DORN | J | |
| line 4 - | 04 05 2021 | 1311 | NCN | M M1 116A | UTM DEC.TP | NELSON | S | |
| line 2 - | 01 13 2021 | 1540 | NCN | M M1 206A | POPADJ.JK | DAVIS | R | |
| | 01 06 2021 | 1730 | NCN | M M3 103B | BED MOVE.TP | FITCH | S | |
| | 12 23 2020 | 1647 | NCN | M M1 112B | UTM DEC.TP | NELSON | S | |
| | 12 15 2020 | 1436 | NCN | M M1 209B | POPADJ.JK | DAVIS | R | |
| | 12 02 2020 | 1328 | NCN | M M4 214A | POPADJ.JK | FITCH | S | |

NEXT RESPONSE: RESPONSE VALUE:
DC901010 MORE PAGES TO DISPLAY - PRESS PF7/PF8 TO CONTINUE
PF4-INQUIRE PF9-LOCFAC PF10-LOCATN PF11-LOCTEMP

Exhibit B

COPY

OCMS Progress Note Selection

Selected Offender

208902 | Wright, Carlton

Note Selection:

| Author | Activity Date | Date/time Prepared |
|---|---|---|
| Jones | 29-APR-2021 | 04/29/2021 01:24:31 P.M. |
| Jones | 09-APR-2021 | 04/09/2021 06:26:15 A.M. |
| Clark | 05-APR-2021 | 04/05/2021 01:51:03 P.M. |
| Clark | 05-APR-2021 | 04/05/2021 01:48:56 P.M. |
| Clark | 31-MAR-2021 | 03/31/2021 12:38:40 P.M. |
| Clark | 04-MAR-2021 | 03/04/2021 07:38:05 A.M. |

Create Progress Note

Preview Selected Note

Preview Mult Notes/Page

Move

Select Program:

Note

Entry #2 → Offender Wright refused housing on night shift and was moved to pod 2. Due to his increasing uncooperative nature towards this Case Manager specifically Case Manager Clark has agreed to keep offender Wright on his caseload temporarily until a BITs assessement has been completed. Once referrals are opened a referral for RWI will be entered.

*ac_notes_sel*

Exhibit C

Exhibit D

# REPORT OF DISCIPLINARY HEARING

State Form 39586 (R8 / 11-17)
INDIANA DEPARTMENT OF CORRECTION

03 214 A — 6-11-21

| | | | |
|---|---|---|---|
| Case number: NCN 21-06-0008 | | | Date assigned (month, day, year): 6-4-21 |
| Name of offender: WRIGHT, CARLTON | DOC number: 208902 | Facility: NCN | Date of hearing (month, day, year): 6-16-21 |
| Offense: FIGHTING | Code number: 372 | Date of alleged offense (month, day, year): 6-2-21 | Plea: -GUILTY- |

**Offender's comment** THE REASON WE GOT INTO A FIGHT WAS THAT C.O. DUNN TOLD HIM I WAS A WELL KNOWN SNITCH, AND THAT HE MITE WANT TO WATCH TALKING ABOUT HIS CASE AROUND HIM.

The evidence and / or witness statements that you requested at your screening or were otherwise requested by staff was / were considered.
The following evidence was relied on to reach the decision in this hearing:

☒ Staff Reports ☒ Statement of Offender ☐ Evidence from Witnesses ☐ Other (specifically )

☒ Physical Evidence (specifically PICTS, SIR, MEDICAL BODY SHEETS, )

☒ Video Evidence ☒ Incident Viewable ☐ Incident not viewable

**Decision:** ☐ Dismissed ☒ Guilty ☐ Not Guilty — Continuance requested? ☐ Yes ☒ No

**Reason for decision:** BASED ON COND. REPORT, VIDEO, EVIDENCE -GUILTY-

I DID NOT SEE WRIGHT START THE FIGHT.

**If finding is guilty, the following sanction(s) is / are hereby Imposed / Recommended:**

**NON-GRIEVOUS LOSS**

- ☐ Written reprimand specifically:
- ☐ Change in work / housing assignment, specifically:
- ☒ Disciplinary restrictive housing (*less than sixty (60) days*) specifically: TIME SERVED
- ☐ Extra work duty, specifically:
- ☐ Inter-Facility transfer recommendation, specifically:
- ☐ Loss of privileges, specifically:
- ☐ Restitution, (*$200.00 or less*) specifically:

SCANNED JUN 2 3 2021

**GRIEVOUS LOSS**

- ☐ Disciplinary restrictive housing, specifically:
- ☐ Restitution, (*over $200.00*) specifically:
- ☐ Recommended earned credit time deprivation of ______ days.
- ☐ Recommended credit class (CC) change: retain / demote / promote
- ☐ Imposition of suspended sanction: Case number:
  Sanction Imposed:

**APPROVED** 6-18-21

**Reason for sanctions imposed:** ☐ Seriousness ☒ Frequency / Nature ☐ Offender's attitude and demeanor during hearing ☐ Degree to which violation disrupted/endangered security of facility ☐ Likelihood of sanction having a corrective effect on offender's future behavior

| Effective date (month, day, year) | Available Earned Credit Time (ECT) to deprive as of effective date | New Earliest Possible Release Date (EPRD) after action(s) (month, day, year) |
|---|---|---|
| | | |

I have been made aware of this disposition / recommendation and of my rights to appeal.

| | | |
|---|---|---|
| Signature of offender: X Carlton Wright | | Date signed (month, day, year): X 6-16-21 |
| Name of member | Name of chairman: T. THOMPSON | Name of member |

**DISTRIBUTION:** White - Facility Packet; Canary - Central Office Packet; Pink - Offender

Wright,

Exhibit # E

Please review the BITS Guides included. To temporarily offset conflict you will remain on CM Clark's Caseload. Due to your issues in the other pods it is apparent that pod 2 will be appropriate to house you for the time being. You will complete the BITS with Clark at first and transition to my caseload once we can work cooperatively. Once RWI Opens (May 1) Clark has you on a list for RWI Referral.

4-12-21

# Offender Job Description Contract

Exhibit F

Department: Unit Team Program Aide

Job Title: UT-HA01-01(POD)-Clerks02-B-I

Pay Grade: B-Pay

Hours Work: 0700-1500

Description: **STAND Program Aide:**

**The work of a STAND Program Aide would include a variety of clerical duties and utilizing knowledge of STAND Activities. Performs clerical work requiring use of working with participants in the STAND Transition Unit.**

I have read the above job description and understand the duties that I have applied for. I also understand that I will be held responsible and accountable for my actions while performing this job assignment. Any misconduct will subject me to disciplinary actions and/or termination of my assignment.

The following Hazard Communication Program (HCP) has been established for the Indiana Dept of Correction operations in all facility locations. A copy of this program, a chemical inventory list and corresponding Material Safety Data Sheets for all flammable, toxic and caustic materials will be kept in the office of the Safety Hazard Manager (SHM) and will be made available for review by all employees. Copies may also be kept in other locations as deemed necessary by the SHM and Superintendent in conjunction with Central Office. This program is intended as the department's plan for compliance with the Hazard Communication Standard 29 CFR 1910.1200.

Date: 6-21-19 DOC# 208902

Offender Name: Carlton Wright

Offender Signature: Carlton Wright

Staff [signature] Date 6/24/19

Forward to Offender packet when signed

3/4/19

# APPLICATION FOR EMPLOYMENT

The GEO Group, Inc.

LAST NAME: Wright FIRST NAME: Carlton

DOC NUMBER: 208902 ASSIGNED HOUSING UNIT: 01-102 ~~[illegible]~~

CURRENT POSITION: Unemployed/ Stan Program

POSITION APPLYING FOR: ~~Range Detail~~ MENTOR/ /Program aide

EDUCATION: 2 semesters of college (S.I.U.)

WORK HISTORY OR EXPERIENCE:
I've had multiple jobs in the kitchen, including working in the officer dining room. I've also had several jobs in society before.

## INTERVIEWER COMMENTS / REASON FOR DENIAL

## FOR CLASSIFICATION USE ONLY

(PLEASE DO NOT WRITE IN BOXES BELOW)

| Education Code | Credit Class | Class. Recommendation | Medical Recommendation | I / A Recommendation |
|---|---|---|---|---|
| A (B) C D E F | EPRD 2035<br>Conduct History [signature] | Approved ☑<br>Deny ☐<br>Sign: [signature] | Approved ☐<br>Deny ☐<br>Sign: | Approved ☐<br>Deny ☐<br>Sign: |

UPDATED 12/5/2018

Exhibit G

Name: Carlton Wright

DOC: 208902

Housing location: O4-113B

Subject: STAND program completions

Carlton Wright arrived to NCN-Transition Unit on 3/8/2019. During his time at this facility he has completed several offender facilitated classes and has facilitated multiple himself.

He has completed the following classes:

Anger Management on 8/19/2019

Houses of Healing on 8/19/2019

Inside and Out on 8/19/2019

National Institute of Corrections Facilitator Training on 8/19/2019

Conflict Resolution on 1/24/2020

Addiction Recovery on 1/24/2020

Motivation to Change on 1/24/2020

He has facilitated the following classes:

Anger Management

Conflict Resolution

S. Nelson

Unit Team Manager, STAND Unit

This is a paper that U.T.M. Nelson typed and put togethe for me. Showing not only the classes that I taught, but also, the other ones I participa in and received a certificate for. This was back in 2020, when I wa still living in O unit. When me and Nelson had a good report, prior to Nelson allowing Counselor Jones to manipulate his actions, and the way he thinks, sinc [illegible] been here in [illegible] unit. Jones [illegible] show, [illegible] Nelson we [illegible]

Exhibit H

## 9. Institutional Behavior

| Case No | Incident Date | Facility | Code | Conduct Description |
|---|---|---|---|---|
| NCN 22010025 | 01/27/2022 | NCN | B215 | Unauthorized Possession Of Property |
| NCN 22010026 | 01/26/2022 | NCN | C347 | Refusing An Order |
| NCN 21080022 | 08/05/2021 | NCN | C348 | Insolent/Vulgar/Profane Behavior |
| NCN 21060049 | 06/28/2021 | NCN | C356 | Refusing An Assignment |
| ( NCN 21060008 | 06/02/2021 ) | NCN | C372 | Fighting with ofd. Dorsey |
| WVS 17050007 | 05/26/2017 | WVS | C353 | Unauthorized Possession Of Property |
| WVS 17030011 | 03/29/2017 | WVS | C361 | Abuse Of Mail/Telephones/Visits |
| WVS 15120001 | 12/01/2015 | WVS | C361 | Abuse Of Mail/Telephones/Visits |
| WVS 14120001 | 12/01/2014 | WVS | C361 | Abuse Of Mail/Telephones/Visits |
| WVS 14090001 | 09/01/2014 | WVS | C350 | Lying To Anyone |
| WVS 14020003 | 02/07/2014 | WVS | C361 | Abuse Of Mail/Telephones/Visits |
| WVS 13050013 | 05/22/2013 | WVS | C361 | Abuse Of Mail/Telephones/Visits |
| WVS 13040003 | 03/31/2013 | WVS | C344 | Misuse Of Medication |
| WVS 13020011 | 02/14/2013 | WVS | C361 | Abuse Of Mail/Telephones/Visits |
| WVS 13020010 | 02/13/2013 | WVS | C361 | Abuse Of Mail/Telephones/Visits |
| WVE 12030035 | 03/11/2012 | WVE | B212 | Battery Against Offender |
| WVE 12020113 | 02/24/2012 | WVE | C366 | Unauthorized Area |
| WVD 11100048 | 10/08/2011 | WVD | B215 | Unauthorized Possession Of Property |
| WVD 11090016 | 09/06/2011 | WVD | C366 | Unauthorized Area |
| WVD 11090007 | 09/01/2011 | WVD | C366 | Unauthorized Area |
| WVD 11050106 | 05/25/2011 | WVD | C353 | Unauthorized Possession Of Property |
| WVD 11050107 | 05/25/2011 | WVD | C347 | Refusing An Order |
| WVD 11040090 | 04/21/2011 | WVD | C366 | Unauthorized Area |
| WVD 10120071 | 12/17/2010 | WVD | C347 | Refusing An Order |
| WVD 10100060 | 10/14/2010 | WVD | C366 | Unauthorized Area |

## 10. Physical and Mental Health

**A. Current Medical Diagnosis:**

Medical Code A: Free of illness or injury; free of physical, mental or emotional impairment; individuals with short term self limiting condition requiring minimal surgical, medical, nursing or dental intervention limited to 30 day's duration.

**Comments**

For additional medical, mental health, and addiction recovery information, please email IDOCmedical@idoc.in.gov

**B. Current Mental Diagnosis:**

Mental Health Code A: Free of functional behavioral health impairment in the current living environment; individuals with short-term, self limiting condition requiring minimal behavioral health intervention limited to thirty (30) days' duration.

**Comments**

For additional medical, mental health, and addiction recovery information, please email IDOCmedical@idoc.in.gov

**C. Current Medications:**

**Comments**

For additional medical, mental health, and addiction recovery information, please email IDOCmedical@idoc.in.gov

**D. Need for Referral or Appointments:**

**Comments**

For additional medical, mental health, and addiction recovery information, please email IDOCmedical@idoc.in.gov

## 11. Release Plan

**A. Release Residence:**

Exhibit I
pg 1 of 2

**OFFENDER GRIEVANCE**
State Form 45471 (R4 / 4-17)
DEPARTMENT OF CORRECTION

| FOR OFFICIAL USE ONLY |
|---|
| Grievance number: 122186 |

| To: Facility Grievance Specialist | Facility: New Castle Corr. Fac. | Date (month, day, year): 1-23-21 |
|---|---|---|
| From (name of offender): Carlton Wright | DOC number: 208902 | Signature of offender: Carlton Wright |
| Housing assignment: M1-206 (annex) | Date of Incident (month, day, year): 1-6-21 | |

**Provide a brief, clear statement of your complaint or concern. Include any information that may assist staff in responding to your grievance. *(NOTE: A Single ONE-sided sheet of paper may be attached if necessary to explain your grievance.)***

This grievance is pertaining to U.T.M Nelson, the Unit Team Manager over M and O-unit of the annex building. This is regarding a verbal altercation that I had with him, wherein he made a very threathening statement towards me, regarding me being housed here in (M-unit) his unit, where he is the head boss at, and have all of the say so of what happens and goes on in this housing unit. On 1-6-21 at approx. 2:00 pm I was informed by Sgt. Moore that I had yet another bed move, and I was being moved from M1-112 to M3-103. So I began packing my belongings in my room and preparing to move. At approx. 3:00 pm, my cell door rolled open (M1-112), and there was a flatbed moving cart on the range for me to use to move my property with. U.T.M Nelson arrived on the range five minutes later, accompanied by (continued pg 2)

**State the relief that you are seeking.**

Not to be, or feel as if I'm going to be threathen, or subjected to retaliation for me exercising my first ammendment, by me utilizing my freedom of speech and voicing how I feel; especially if I feel as if I'm being treated unfairly then others. I shouldn't have to fear any type of retaliation against me for expressing my dislike about somethi

| Signature of Facility Grievance Specialist | Date (month, day, year) |
|---|---|
| | |

Exhibit I pg 2 of 2

COPY

**OFFENDER GRIEVANCE**
State Form 45471 (R4 / 4-17)
DEPARTMENT OF CORRECTION

| FOR OFFICIAL USE ONLY |
|---|
| Grievance number: 122186 |

| To: Facility Grievance Specialist | Facility: New Castle Cor. Fac | Date (month, day, year): 1-10-21 |
|---|---|---|
| From (name of offender): Carlton Wright | DOC number: 208902 | Signature of offender: Carlton Wright |
| Housing assignment: M3-103B | Date of incident (month, day, year): 12-15-20 thru 1-7-21 and also 1-7-21 thru 1-7-21 | |

Provide a brief, clear statement of your complaint or concern. Include any information that may assist staff in responding to your grievance. (NOTE: A Single ONE-sided sheet of paper may be attached if necessary to explain your grievance.)

This grievance is concerning U.T.M. Mr. Nelson, and Counselor Jennifer Jones, both of whom work closely together in M-Dorm at the annex. This is pertaining to their deliberate indifference towards me, and their intentional and deliberate continuous placing of me with "problematic" cellies. Due to Nelson and Jones' personal dislike and vendetta against me, they have both decided in cohorts to intentionally house me with cellies who they both know and deem to be "problems" in and out of the cell. Inmates whom they have even had personal problems and "run-ins" with in the past, and that they don't like or care for either. Inmates who are considered "unlikable" cellies, or hard to live and get along with, by all the other inmates....and Nelson and Jones are very aware of this fact, due to their history, and their past cellies complaining about how extremely difficult it is to live with these two particular inmates. Nelson and Jones have intentionally and knowingly placed me with two different "problematic" cellies on two seperate occasions in back to back → (cont.) →

State the relief that you are seeking. For Mr. Nelson and Ms. Jones to stop acting deliberately indifferent towards me concerning my housing assignments, by placing me in rooms with cellies that they know I'm not compatable with at all. To stop acting out of spite towards me, by intentionally housing me with well known "problematic" cellies and who are trouble makers, which has the high potential of me clashing with them and getting in trouble. To please consult with me, before just forcing me to live with any random person; the same way that they do and treat other inmates in here regarding their housing. Thank you.

| Signature of Facility Grievance Specialist | Date (month, day, year) |
|---|---|
| A. Cunningham | 1/13/21 |

(6 of 7) Exhibit 5

33C02-2102-PL-000004

## SWORN AFFIDAVIT

Comes the Affiant, Kyle Brown, and declaring under oath and penalty of perjury does depose and say:

I Offender Kyle Brown #178325 was hanging out at my door (M1-116) around 3:00pm on 1-6-21 and I remember what time it was because T.M.2 had just come on. I heard some talking outside my cell, so I muted my TV to listen. That's when I observe offender Wright #208902 having a conversation right in front of my door near the entrance of the pod 1. Wright was talking to Mr. Nelson as he was packing his property onto the moving cart to be moved to another pod. During that (see attached) →

Further, Affiant Sayeth Naught.

I hereby swear and affirm under the penalties for perjury that the foregoing is true and correct to the best of my knowledge and belief.

1-15-21
Date

[signature]
Affiant's Signature

STATE OF INDIANA )
) SS:
COUNTY OF HENRY )

MISTY M. CECIL
Notary Public, State of Indiana
Henry County
Commission # 647004
My Commission Expires
August 27, 2021
SEAL

SUBSCRIBED AND SWORN to before me, a Notary public, this 15 day of January, 2021.

[signature: Misty M. Cecil]
Notary Public

County of Residence: Henry
My Commission expires: August 27, 2021

NCCF#304(Rev. 02/05/19 (01:15:36 PM)

Exhibit #1 (2 of 2)

Exhibit J
pg 2 of 2

conversation with U.T.M Nelson, I heard offender wright expressing his frustration to Nelson about him constantly being moved every few days to a new Pod, also about them keep placing In cells with problematic Inmates That's when I heard U.T.M Nelson say, " If I was you, I would stop bitching and complaining about bed moves & telling me how to do my job, or I promise you, I will make your stay back here rough on you and a living hell. Then I I heard offender wright respond & say to Mr. Nelson. "Are you threatening me", and then Nelson said " you can take It however you want to". wright then said, " alright then", and he finished loading the moving cart and moved off the Pod.

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

CARLTON WRIGHT,
Plaintiff,

vs.

SHANE NELSON,
CECIL,
KRUL,
GARD,
SAYE,
LEE,
DUNN,
FOLEY,
B. LEACH,
DUNLAP, and
MYERS
Defendants.

CASE NO. 1:23-cv-00459-TWP-MKK

Exhibit K

**RESPONSE TO PLAINTIFF'S FIRST SET**
**OF INTERROGATORIES TO DEFENDANT**

Defendant, Shane Nelson, with counsel, Joseph T. Lipps, responds to *Plaintiff's First Interrogatories* as follows:

1.) Please identify all positions and titles, with corresponding dates of employment, that you have held as an employee at New Castle Corr. Fac; and describe your job responsibility for each position and title.

**RESPONSE:**

Correctional Officer – Safety and security of the front entrance for staff and visitors by ensuring proper identification. Processing visitors for the offender population. Monitored offender movement and activity at various posts.

Release Specialist – Worked with other Re-entry Specialists to prepare release paperwork prior to each offender's release. Communicated with case Managers and Parole Agents to ensure that each offender had appropriate release placement approved. Tracked eligibility and maintained correspondence with counties and IDOC Central Office for the Community Transition Program.
Re-entry Coordinator – Instructed orientation class for all new offenders to the facility and provided re-entry class to all offenders being released to the community. Utilized the Carey Group Guides and BITS with the offender population during re-entry programming. Served as the Career Development Training Coordinator.
Case Manager – Serve as a point of contact for day to day offender issues in the housing unit. Coordinates case management matters and facilitates offender access to programs and services. Work with offenders to create case plans based on the Indiana Risk Assessment System (IRAS) scores.
Unit Team Manager – Responsible for the supervision and performance review of Case Managers assigned to the Unit Team. Facilitate positive communication between the Unit Team and other departments of the facility and maintain communication between Unit Team and the inmate population. Coordinate with custody staff to ensure unit safety and sanitation needs are met on a daily basis. Coordinate with the Physical Plant Director and the Fire and Safety Manager to resolve maintenance and safety issues within the unit.
Facility Grievance Coordinator – Maintain accurate records of offender grievances and any corresponding action pursuant to the grievance. Investigate and recommend response action to management. Ensure compliance with client agency procedures pertaining to offender grievances.
PREA Compliance Manager – Serves as the facility's primary liaison and point of contact for the Prison Rape Elimination Act (PREA) and coordinates the facility's compliance efforts and reporting requirements to comply with the Act. Writes, updates, trains, and oversees the implementation of corporate and facility specific PREA related policies and procedures in order to better ensure compliance with all Department of Justice PREA standards and audit requirements. Compiles facility statistics and reports on incidents of sexual abuse and sexual harassment. Monitors individuals who report abuse for retaliation in accordance with Department of Justice and facility PREA standards. Investigates and prepares investigative reports related to sexual abuse and sexual harassment allegations.

I do not recall the specific dates of each position. My initial hire date was in May of 2013.

2.) As the Unit Team Manager who works in the Protective Custody Unit, are you familiar with the "Protective Custody Policy and Administrative Procedure Manual" for New Castle Corr. Fac.?

Exhibit K

**RESPONSE:**

At the time I was employed as UTM, yes.

3.) As the Unit Team Manager of the Protective Custody unit, how much say-so and/or authority do you have when it comes to where an offender in the Protective Custody Unit will be housed at, or either receive a new bed assignment? Please explain in exact detail every step of the

chain of command when it comes to a bed housing assignment, and exactly where you fit at in that process. in the Protective Custody unit, as well as in O unit too.

**RESPONSE:**

Bed assignments are typically assigned by the case manager and then approved by the Unit Manager and count office after reviewing offender compatibility with the proposed cellmate and recreation line.

Exhibit K

4.) As the Unit Team Manager, do you have the authority to stop/decline a bed move that a Counselor puts in for/suggest if you do not agree with the bed move?
B.) Is it true, that as you being the U.T.M., that your approval is also apart of the process where an offender will be housed at?

**RESPONSE:**

Yes.

b. Yes.

5.) Have you personally ever heard any other offenders in the Annex call the plaintiff Carlton Wright a "snitch", or either refer to the plaintiff as the "police"?
B.) Have you personally ever heard any other staff members call the plaintiff Carlton Wright a "snitch", or either refer to the plaintiff as a "rat"?

**RESPONSE:**

Besides the plaintiff himself, not that I can recall.

b. Not that I can recall.



Exhibit K

10.) If any offender who is living in Protective Custody becomes in fear for their life or safety, what should they do about it?

B.) As you being the U.T.M. once you become aware of an offender being in fear for their safety or life from another offender in Protective Custody, what should you do according to policy? Please explain each and every step of what you should do.

C.) Did you follow those steps and procedures that you just listed regarding the Plaintiff's concern for his safety pertaining to offender Dorsey? If you answered Yes to the last question, then what did you exactly do. If you answered No, then please explain why didn't you.

**RESPONSE:**

Report it to staff.

b. The offender would need to be reviewed for possible cell assignment change or transfer.

c. I do not recall.

Exhibit K

11.) Do you take the safety and security of an offender seriously?

B.) Did you take the safety and security of the Plaintiff seriously about the Plaintiff being in fear of being harmed

by offender Dorsey? If you answered yes, please explain what did you do to take it seriously?

**RESPONSE:**

Yes.

b. If I had any knowledge then yes. I do not recall what, if any, steps were taken.

Exhibit K

12.) Was the Plaintiff eventually moved back to the same exact same range as offender Dorsey was still on?

B.) Was the Plaintiff placed in cell M1-114 while offender Dorsey was living in cell M1-116?

C.) Did you approve, and sign off the Plaintiff being moved and placed in cell M1-114?

D.) Why was the Plaintiff moved back to the same exact range as offender Dorsey was still living on?

E.) Which staff member put in the move request and bed assignment for the Plaintiff to be placed in cell M1-114?

**RESPONSE:**

I do not recall.

Exhibit K

b. I do not recall.

c. I do not recall.

d. I do not recall.

e. I do not recall.

pg 7 of 11

13.) Are you familiar with a staff member by the name of Jama Jones?

B.) What is Jama Jones job position at N.C.C.F?

C.) Do you and Jama Jones, well, did you and Jama Jones work together in the Protective Custody Unit? Please list the corresponding dates that you and Jama Jones worked together at N.C.C.F.

D.) What was Jama Jones responsibility as a staff member at N.C.C.F? Explain in detail.

E.) Was Jama Jones authorized to suggest/put in for an offender to have a bed move?

F.) Who (which staff member) suggestion was it to have the Plaintiff moved back to the same range as offender Dorsey?

Exhibit K

**RESPONSE:**

Yes.

b. Case Manager.

c. Yes, I do not recall the specific dates.

d. Serve as a point of contact for day to day offender issues in the housing unit, coordinates case management matters and facilitates offender access to programs and services, and work with offenders to create case plans based on the Indiana Risk Assessment system (IRAS) scores.

e. Yes.

f. I do not recall.

14.) Per policy, are Protective Custody offenders allowed to be housed in cells directly next door to general population ("non" protective custody) offenders?

B.) When the plaintiff was placed in segregation after being attacked by offender Dorsey in the Protective Custody Unit; why was the plaintiff housed directly next door to a well known violent gang member that was also a general population ("non" protective custody) offender? I'm referring to offender Brooks in cell D3-215

C.) Which staff member(s) authorized and signed off for having and allowing for the plaintiff to be housed directly next door to offender Brooks who was in cell 03-215? Please list all of the staff members names who all signed off on placing the plaintiff in cell 03-214 next to offender Brooks.

**RESPONSE:**

There would not have been general population inmates housed in the protective custody unit.

b. I do not recall why either offenders were housed in those specific cells.

**RESPONSE:**

Not that I recall.

Exhibit K

b. I have no knowledge of this.

c. I have no knowledge of this.

d. If an offender was to assault another offender and staff had knowledge of this, then yes.

16.) Can you please explain in detail, exactly what an officer is suppose to do after an offender has been assaulted with a weapon by another offender? Can you please explain what the protocol and steps are step by step per policy, after the assault occurs.

**RESPONSE:**

They would need to separate the offenders, contact a supervisor, submit incident reports, conduct reports and have the offenders evaluated. I cannot recall specifically what policy states.

17.) After the Plaintiff was assaulted with a weapon by offender Brooks, was the Plaintiff Immediately moved to another cell location away from offender Brooks? If the answer is yes, then when (an exact date), and where (cell location) was the plaintiff moved to. If the answer is No, then please explain why in detail that the plaintiff was not moved for safety purposes away from offender Brooks after being assaulted by him?

**I affirm, under the penalties of perjury, that the foregoing responses are true and accurate to the best of my knowledge and information.**

Signature: S. Nelson

Printed: Shane Nelson

Exhibit K

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CARLTON WRIGHT, Plaintiff, | ) | CASE NO. 1:23-cv-00459-TWP-MKK |
| vs. | ) | |
| SHANE NELSON, CECIL, KRUL, GARD, SAYE, LEE, DUNN, FOLEY, B. LEACH, DUNLAP, and MYERS Defendants. | ) | Exhibit L |

**RESPONSE TO PLAINTIFF'S FIRST SET**
**OF INTERROGATORIES TO DEFENDANT**

Defendant, Officer Dunlap, with counsel, Joseph T. Lipps, responds to *Plaintiff's First Interrogatories* as follows:

1.) Please identify all positions and titles, with corresponding dates of employment, that you have held as an employee at New Castle Corr. Fac; and describe your job responsibility for each position and title.

**RESPONSE:**

Just an officer.

2.) As an officer who works in the Protective Custody Unit, are you familiar with the "Protective Custody Policy and Administrative Procedure Manual" for New Castle Corr. Fac?

**RESPONSE:**

Yes.

3.) Are you familiar with what a "pipe check" is, or either what "making a round" is, as it pertains to doing a security check? Can you please explain to me in exact detail what that is according to policy, and what all it consist of.

B.) Per policy, how frequently are (an officer) you suppose to conduct and do a "pipe check, or either a round on the housing unit?

C. Per policy, what is the purpose of doing a "pipe check", or either "making a round" on the housing unit? Can you please explain detail.

**RESPONSE:**

Checking on the offenders.

Exhibit L

b. 30 minutes, 15 minutes or many as needed.

c. Checking on the offenders.

4. As an officer, is it your job responsibility to keep and make sure that all offenders are safe?

**RESPONSE:**

Generally safe, yes. Cannot make sure no one fights.

5. Prior to the date of June 2, 2021 when offender Dorsey and the Plaintiff Carlton Wright was involved in a fight together for thirty-seven minutes long on the inside rec pad in M-unit; before this incident transpired, were you ever knowledgable, or either made aware by your supervisor(s) or any other staff member that these two offenders didn't get along with each other, and that there might be some problems between them?

Exhibit L pg 3 of 10

(ofc Dunlap)

7. When you are not "making a round", or either doing a "pipe check" on the housing unit, what are you doing in the inbetween time?

**RESPONSE:**

Generally, watching the lines.

8. On a typical normal day when the recreational lines are being run in M-unit, how many floor officers are there?

B.) On the date of June 2, 2021 when the attack on the plaintiff happen by offender Dorsey on the inside rec pad, how many floor officers were working in M-unit that day?

C. How many floor officers does it require to run recreational lines in M-unit?

D. Have you been properly trained and educated on how to conduct safety and security checks on the housing units while recreational lines are going on?

Exhibit L

**RESPONSE:**

Don't recall

b. Don't recall.

c. Don't recall

pg 4 of 10

(ofc Dunlap)

d. Yes.

9.) Is there an officer's office/officer's bubble inside of M-unit?

B.) Inside this officer's office located in M-unit, are there a video screen(s) that's able to watch and monitor the live footage from the cameras recording

the activity on the ranges (units)?

C.) Is there an officer thats suppose to be in the officer's office watching and monitoring these cameras and activity of the ranges at all times?

D.) Are there cameras located on the inside recreational pad on One Range where the attack on the plaintiff happened at by offender Dorsey?

E.) Is the live camera footage from the inside recreational pad on One Range able to be seen and viewed on the screen inside the officer's office located in M-unit?

Exhibit L

**RESPONSE:**

Yes.

b. Yes. But again there is 4 pods to watch at once.

c. Yes, but you can only watch one pod at a time and there's 4 of them.

d. Yes. But they was blocking it.

e. Yes. But not all pod is covered.



(ofc Dunlap)

12.) Is it your job responsibility to prevent offenders from harming one another, or either to intervine and stop it from happening if it occurs?

B.) If you do see offenders involved in a physical altercation harming one another, what are you suppose to do regarding that situation per policy? Please explain in detail each step.

**RESPONSE:**

Stop it if we see it happen.

b. Stop it and call a signal.

13.) Why wasn't this thirty seven minute long assault on the Plaintiff stopped or intervened by you, or by any one of the other five floor officers?

**RESPONSE:**

If they are offenders know when to do things, so when seen it, it was stopped.

Exhibit L



(ofc Dunlap)

14.) Is it a common regular occurrence for fights and assaults on offenders by other offenders to not get stopped or intervened by officers, in the Protective Custody Unit?

B.) To your Knowledge, and since you've been employed at N.C.C.F, are you aware of any other fight or assaults between two (or more) offenders that has transpired on camera in the Protective Custody unit, that was not stopped or intervened by a staff member?

**RESPONSE:**

It always gets stopped, but fights, assaults are common.

b. Every day.

15). Have the Plaintiff Carlton Wright been causing problems and having problems with different staff members in M-unit since he be housed in M-unit?

Exhibit L

pg 7 of 10

(ofc Dunlap)

B.) Would you personally consider the Plaintiff to be a "problematic" offender?

**RESPONSE:**

Yes, all the time. He was always saying he didn't like this person, that person.

b. Yes.

16.) Have you ever heard personally, or either heard from any other staff member, about Jama Jones or U.T.M. Shane Nelson complaining about the Plaintiff's bad or rude behavior that he's been displaying in M-unit?

**RESPONSE:**

No.

17. Have the Plaintiff ever personally filed any grievances on you prior to June 2, 2021?

B. Is the Plaintiff well known for filing grievences on the staff in M-unit?

Exhibit L

Pg 8 of 10

(ofc Dunlap)

**RESPONSE:**

With the information generally available to me, I am unable to determine. If there is a specific instance being asked about, then I'm more than happy to investigate and see, however the relevance to this lawsuit is not obvious.

b. Yes. He did all the time.

18.) Have you ever heard any rumors or conversation from any offenders or staff members about the Plaintiff being labelled a "snitch", or referred to as the "police"?

**RESPONSE:**

No.

Respectfully submitted,

By: [signature]

Joseph T. Lipps, Atty. No. 35936-89
BBFCS ATTORNEYS
27 North 8th Street
Richmond, IN 47374
Telephone: (765) 962-7527
Facsimile: (765) 966-4597
jlipps@bbfcslaw.com
*Attorneys for Defendants.*

Exhibit L



(ofc Dunlap)

**I affirm, under the penalties of perjury, that the foregoing responses are true and accurate to the best of my knowledge and information.**

Officer Dunlap

Signature: Dunlap

Exhibit L

Pg 10 of 10

(ofc Dunlap)

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CARLTON WRIGHT, Plaintiff, | ) | CASE NO. 1:23-cv-00459-TWP-MKK |
| vs. | ) | |
| SHANE NELSON, CECIL, KRUL, GARD, SAYE, LEE, DUNN, FOLEY, B. LEACH, DUNLAP, and MYERS Defendants. | ) | Exhibit M |

**RESPONSE TO PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT**

Defendant, Lt. Krul, with counsel, Joseph T. Lipps, responds to *Plaintiff's First Interrogatories* as follows:

1.) Please identify all positions and titles, with corresponding dates of employment, that you have held as an employee at New Castle Corr. Fac; and describe your job responsibility for each position and title.

**RESPONSE:**

Officer in 2008; Sergeant in 2010; currently Lieutenant

2.) As an officer who works in the Protective Custody Unit, are you familiar with the "Protective Custody Policy and Administrative Procedure Manual" for New Castle Corr. Fac?

**RESPONSE:**

Generally, yes.

3.) Are you familiar with what a "pipe check" is, or either what "making a round" is, as it pertains to doing a security check? Can you please explain to me in exact detail what that is according to policy, and what all it consist of.

B.) Per policy, how frequently are (an officer) you suppose to conduct and do a "pipe check, or either a round on the housing unit?

C. Per policy, what is the purpose of doing a "pipe check", or either "making a round" on the housing unit? Can you please explain detail.

**RESPONSE:**

Yes, pipe checks in RHU / Rounds walk through unit.

Exhibit M

b. No pipe checks at this date in M unit.

c. To check on offender.

4. As an officer, is it your job responsibility to keep and make sure that all offenders are safe?

**RESPONSE:**

Generally, yes.

5. Prior to the date of June 2, 2021 when offender Dorsey and the Plaintiff Carlton Wright was involved in a fight together for thirty-seven minutes long on the inside rec pad in M-unit; before this incident transpired, were you ever knowledgable, or either made aware by your supervisor(s) or any other staff member that these two offenders didn't get along with each other, and that there might be some problems between them?

6.) If you answered yes to the last question, then please explain how you became knowledgable, or were made aware. Please explain in detail, and list the name(s) of all the staff members who made you aware, and the corresponding dates.



Exhibit M

8. On a typical normal day when the recreational lines are being run in M-unit, how many floor officers are there?

B.) On the date of June 2, 2021 when the attack on the plaintiff happen by offender Dorsey on the inside rec pad, how many floor officers were working in M-unit that day?

C. How many floor officers does it require to run recreational lines in M-unit?

D. Have you been properly trained and educated on how to conduct safety and security checks on the housing units while recreational lines are going on?

**RESPONSE:**

Depends on staffing.

b. Don't recall

c. 2 officers and a sergeant

d. Security checks yes. Over watch rec lines.

Exhibit M

9.) Is there an officer's office/officer's bubble inside of M-unit?

B.) Inside this officer's office located in M-unit, are there a video screen(s) that's able to watch and monitor the live footage from the cameras recording the activity on the ranges (units)?

C.) Is there an officer thats suppose to be in the officer's office watching and monitoring these cameras and activity of the ranges at all times?

D.) Are there cameras located on the inside recreational pad on One Range where the attack on the plaintiff happened at by offender Dorsey?

E.) Is the live camera footage from the inside recreational pad on One Range able to be seen and viewed on the screen inside the officer's office located in M-unit?

**RESPONSE:**

Yes.

b. Watch possibly.

c. No, I don't know of any officer's office.

d. There are cameras on every rec pad.

e. M unit bubble can flip through video cameras.

10.) While the thirty-seven minute long attack was taking place on the Plaintiff by offender Dorsey on the One Range inside recreational pad, did you see any of this happening?

**RESPONSE:**

Yes, after the fact on video.

11. When did you first initially become aware and learn that this attack on the Plaintiff transpired?

B.) Once you become aware of this, did you personally do an incident report regarding this? Why or Why not, please explain.

**RESPONSE:**

Can't recall time and date.

b. Can't recall.

Exhibit M

12.) Is it your job responsibility to prevent offenders from harming one another, or either to intervine and stop it from happening if it occurs?

B.) If you do see offenders involved in a physical altercation harming one another, what are you suppose to do regarding that situation per policy? Please explain in detail each step.

**RESPONSE:**

Generally, if we can catch it, yes.

b. Give verbal orders to stop. If not, implement use of force.

13.) Why wasn't this thirty seven minute long assault on the Plaintiff stopped or intervened by you, or by any one of the other five floor officers?

**RESPONSE:**

I did not see it live. I can't speak for other officers.

Exhibit M

I affirm, under the penalties of perjury, that the foregoing statements are based on my own personal knowledge and are true and accurate.

Michael Krul

Exhibit M

pg 8 of 8

# REPORT OF DISCIPLINARY HEARING VIDEO EVIDENCE REVIEW

State Form 55721 (R2 / 3-19)
DEPARTMENT OF CORRECTION

Exhibit N

Exhibit #25

| Name of offender | | DOC number | Case number |
|---|---|---|---|
| Wright, Carlton | | 208902 | NCN-21-06-0008 |
| Date of incident *(month, day, year)* 06-02-2021 | Time of incident 11:58:33 to 12:36:54 | Place of incident M unit pod1 outside rec. pad | |
| Date of review *(month, day, year)* 06-07-2021 | Physical location (server) of video file I.T. Department | | |

Was the offender allowed to review video recorded evidence? ☐ Yes ☑ No

If no, please explain why.
See Statement Below

## SUMMARY OF VIDEO RECORDING BY THE DISCIPLINARY HEARING BOARD

***If the video was not used as evidence in the hearing, please explain why. If more space is needed, please use a separate sheet of paper.***

The video was reviewed outside the presence of the offender. The facility does not want the offenders to know the camera angle, dead spots, quality of the video recordings or where to hide out of the cameras view. Giving the offenders this information would jeopardize the safety and security of the facility by letting them know where they could commit rule violations and assault staff or other offenders out of the view of a camera. As well as increasing the risk of escape attempts in these areas.

The video for the above case was reviewed from 11:54 to 12:40 as the offender requested. Video shows at camera times 11:58:33 offenders identified by Lt. M. Krul as offenders Wright, Carlton #208902 and Dorsey, Elisha meet on the outside rec. pad. The two offenders square off, get into boxers stance and begin sparing until 12:36:54 when they separated.

Camera does not record audio.

| Signature of reviewer | Date of review *(month, day, year)* |
|---|---|
| T. Thompson DHO | 06-07-2021 |
| Printed name of reviewer: T. Thompson | Time of review: 13:30 |

| Signature of offender | Date given to offender *(month, day, year)* | Time given to offender |
|---|---|---|
| Carlton Wright | 6-8-21 | 10:37 ☑ AM ☐ PM |

DISTRIBUTION: Original – Disciplinary Hearing Board file; Copy – Offender packet, facility; Copy - Offender

Two sided, USPS Tracking little Green card included for evidence. please copy both sides.

**OFFENDER GRIEVANCE**
State Form 45471 (R5 / 3-20)
DEPARTMENT OF CORRECTION

| *FOR OFFICIAL USE ONLY* |
| --- |
| Grievance number: 126759 |

| To: Facility Grievance Specialist | Facility: N.C.C.F. | Date *(month, day, year)*: 4-28-21 |
| --- | --- | --- |

| From *(name of offender)*: Carlton Wright | DOC number: 208902 | Signature of offender: Carlton Wright |
| --- | --- | --- |

| Housing assignment: M2-206 (annex) | Date of incident *(month, day, year)*: 4-16-21 |
| --- | --- |

Provide a brief, clear statement of your complaint or concern. Include any information that may assist staff in responding to your grievance.
(***NOTE***: *A Single ONE-sided sheet of paper may be attached if necessary to explain your grievance.*)

This grievance is regarding Counselor J. Jones of M-unit in the annex Building; and pertaining to her deliberate mishandling of my personal mail, containing my families information, their name/mailing/home address. My family sent me some mail by certified mail to the business office, and the receipt to that certified mail (the little green U.S.P.S. slip) containing my families home address was sent to counselor Jones' office, for HER to bring and give to me personally herself. However though (on 4-16-21), instead of Jones bringing me that green paper receipt from the post office containing my families address, like she is really suppose to. She instead, gave it to another offender, the Pod Rep of our Pod, (Pod 2), and had him bring it to me. I was highly upset when the pod rep arrived at my door (see attached)

Exhibit O

State the relief that you are seeking.

For Counselor Jones to stop giving my personal, and or families info to the Pod Rep to give to me.

| Signature of Facility Grievance Specialist: H. Winningham | Date *(month, day, year)*: 5/3/21 |
| --- | --- |

**DISTRIBUTION:** Original – Grievance Specialist; Copy – Offender; Copy – Offender Packet; Copy – IRIS

[redacted]

**OFFENDER GRIEVANCE**
State Form 45471 (R5 / 3-20)
DEPARTMENT OF CORRECTION

Exhibit P
[redacted]

| FOR OFFICIAL USE ONLY |
|---|
| Grievance number 130296 |

| To: Facility Grievance Specialist | Facility N.C.C.F | Date *(month, day, year)* 7-2-21 |
|---|---|---|

| From *(name of offender)* Carlton Wright | DOC number 208902 | Signature of offender Carlton Wright |
|---|---|---|

| Housing assignment MI-113 (Annex) | Date of incident *(month, day, year)* 6-24-21 |
|---|---|

Provide a brief, clear statement of your complaint or concern. Include any information that may assist staff in responding to your grievance. (***NOTE:** A Single ONE-sided sheet of paper may be attached if necessary to explain your grievance.*)

Please refer to the incident report written by officer Foley of day shift first team, on 6-24-21, regarding this situation. Also, please refer to the video camera footage from this particular date (6-24-21) and time (approx 12:30pm - 2:00pm). In order to verify my accounts of this event as valid; also, I'd like to have the video footage preserved for evidence, thank you. On 6-24-21, while I was being housed in Three pod of O-unit (03-214) in the Annex, I was physically assaulted, by having urine, feces, and other bodily discharge squirted/thrown in my face, by offender [redacted] Brooks (inmate# unknown). Offender Brooks was being housed in 03-215, right next door to me as my neighbor at the time this incident took place. (see attached) →

State the relief that you are seeking.

For your officers to undergo better training in safety and security measures to provide them with better knowledge to make better judgement calls, in order to keep me safe, and out of harm's way. To adhere to the policies in place.

SCANNED

| Signature of Facility Grievance Specialist H. Winningham | Date *(month, day, year)* 7/22/21 |
|---|---|

UTION: Original – Grievance Specialist; Copy – Offender; Copy – Offender Packet; Copy – IRIS

RECEIVED 7/22/21

Indiana Department of Correction
New Castle Correctional Facility
Offender Grievance Response Report
**Case Log #: 128906**

Exhibit Q

**DOC No:** 208902 **Offender Name:** Carlton Wright **Bldg/Range/Bed:** O-O3-214A
**Current Facility:** NCN

***TOPIC:*** **Staff/Others - Complaints - Other Complaint Against Staff** **Incident Date:**

**Response**

| *LEVEL* | Form Issue Date | Level Receive Date | Response Date |
|---|---|---|---|
| I - Formal Grievance | 17-JUN-21 | 17-JUN-21 | |

**Level Response**

Inmate Wright is not being retaliated against. He is able to request a separatee against inmate Dorsey, I have completed that paperwork and have forwarded to the Classification department for their further recommendation. Grievance Addressed.
UTM Nelson
H. Winningham

| | | | |
|---|---|---|---|
| II - Formal Appeal | 29-JUL-21 | 29-JUL-21 | 29-JUL-21 |

**Level Response**

Your grievance appeal and all attached documents have been reviewed
I concur with the Facility level responses

Grievance Appeal Addressed at the facility level
Mr. I. Randolph is the Final Reviewing Authority Per
Offender Grievance Process 00 02 301
The above response serves for the Offender Grievance Manager for the final level of review
Mr. I. Randolph. Final Reviewing Authority Offender Grievance Process 00 02 301

H. Winningham
**Executive Assistant**

7/29/21
**Date**

**Student/Offender**

**Date**

**29-JUL-21 11:34 AM**

Indiana Department of Correction
New Castle Correctional Facility

# Offender Grievance Response Report

**Case Log #: 130296**

**DOC No:** 208902 **Offender Name:** Carlton Wright **Bldg/Range/Bed:** M-M1-113A

**Current Facility:** NCN

***TOPIC:*** **Staff/Others - Complaints - Other Complaint Against Staff** **Incident Date:** 24-JUN-21

## Response

| *LEVEL* | Form Issue Date | Level Receive Date | Response Date |
|---|---|---|---|
| I - Formal Grievance | 22-JUL-21 | 22-JUL-21 | |
| II - Formal Appeal | | 22-SEP-21 | 22-SEP-21 |

**I - Formal Grievance — Level Response**

Per custody supervisors policy and procedure was followed. I have requested the camera footage be saved that you asked for in your grievance.
H. Winningahm

**II - Formal Appeal — Level Response**

Exhibit R

Your grievance appeal and all attached documents have been reviewed
I concur with the Facility level responses

Grievance Appeal Being addressed a the facility level
Mr. I. Randolph is the Final Reviewing Authority Per
Offender Grievance Process 00 02 301
The above response serves for the Offender Grievance Manager for the final level of review
Mr. I. Randolph. Final Reviewing Authority Offender Grievance Process 00 02 301

SCANNED

H. Winningham
**Executive Assistant**

9/24/21
**Date**

**Student/Offender**

**Date**

Indiana Department of Correction
Offender Case Management System

Case Notes 2

Exhibit S

**208902** **Wright, Carlton**

**For Date Range: 01-FEB-11 through 11-AUG-21**

Vital Records status: (Choose current status and document below) Applied – Received – Refused – Scanned to IRIS – N/A
BMV ID/Driver's License: Will apply for birth certificate and SSC at a later date. No record on BMV
Birth Certificate:
Social Security Card:
DD214:

Potential Release Placement:
Sponsor/Relationship: No placement at this time.
Address:

Entry #3

Conduct Last 6 months: None

Conversation Narrative: We over to O unit to talk to offender Wright. Wright was moved over to O3 due to a fight he was involved in. He discuss his concerns about why no one arrived to stop the fight for 30 mins. I told him I do not know. He stated why was he moved over to that pod because everyone knew he had an issue with the guy he got into a fight. I told him I did not do the move. I told him I was here to check on him and if he had any questions or concerns. He stated he was fine.

Prepared By: *Ryan Evans*
Date/time Prepared: *11-JUN-21 02:13 PM*

---

Activity Date: 18-JUN-21 Time: Place:

Note Type: General

Entry #1

RAP Need:

On 6/16/2021, the RHU Multi-Disciplinary Review Committee met and reviewed the status of Offender Carlton Wright The decision was made for the offender to remain in RHU under administrative hold. Offender Wright has been recommended to be removed from protective custody status and submitted for transfer.

Prepared By: *Shane Nelson*
Date/time Prepared: *18-JUN-21 11:17 AM*

---

Activity Date: 25-JUN-21 Time: Place:

Note Type: General

Entry #2

RAP Need:

On 6/23/2021, the RHU Multi-Disciplinary Review Committee met and reviewed the status of Offender Carlton Wright The decision was made for the offender to be released from O3 to the population of M-Unit. He will remain on protective custody status and will work with Unit Team staff to complete appropriate BITS and CAREY guides to improve his behavior and attitude towards staff and inmates.

Prepared By: *Shane Nelson*
Date/time Prepared: *25-JUN-21 11:19 AM*

---

Exhibit S

Indiana Department of Correction
Offender Case Management System

# Case Notes 2

**208902** **Wright, Carlton**

**For Date Range: 01-FEB-11 through 11-AUG-21**

Activity Date: 03-JUN-21 Time: Place:

Note Type: General
RAP Need:

SIR Description
Date: 6/2/2021
Time: 1158 hours
Incident type: Inmate on Inmate Fights
Location: M unit outside recreation pad
SIR N/A

List of staff involved: Captain V. Gard, Officer S Leech, Case Manager K. Grinstead and Case Manager C. Bookout
List of offenders involved (include DOC #): Offender Carlton Wright DOC 208902 and Offender Elisha Dorsey DOC 273728

Detailed narrative of incident: On 6-2-21 at approximately 1400 hrs. Lieutenant M. Krul was reviewing video of M1 recreation and found what appeared to be a fight. Offender Carlton Wright DOC 208902 (African American Male) M1-114 and Offender Elisha Dorsey DOC 273728 (African American Male) M1-116 both came out of their cell for recreation at 1158 hrs. Wright went out to the outside recreation pad to wait for Dorsey. Both put arms up and took a defensive stance and began punching at each other. After finding video both offenders were placed in mechanical restraints and escorted to the facility nurse for evaluation. Offender Dorsey sustained a swollen lip on left side and cheek had some redness. Offender Wright has small lip abrasion and states his wrist and toe hurts. Both offenders will be written up for fighting and were placed in RHU O3. There were no injuries to any staff

Facility Administrator M. Sevier, Assistant Facility Administrator S. Fitch and Major R. Davis will be notified by email at 1530 hrs.

Prepared By: *Kyle Grinstead*
Date/time Prepared: *03-JUN-21 01:15 PM*

---

Activity Date: 11-JUN-21 Time: 1413 Place: office

Note Type: Face-to-Face Contact
RAP Need:

Location of Meeting: O3
Current Classification Designation: Current Job/ Program: Idle
PRD: 1/9/2035 MRD: 12/24/2059
IRAS Score/ Risk Level:

Fees/Restitution: Will Discuss these fees at a later date
Court Costs/Fees:
Restitution:
Probation Fees:
Child Support:
BMV Fines/Fees:



WRIGHT_000487

DEPARTMENT OF CORRECTIONS
REQUEST FOR INTERVIEW

TO: Classifications LOCATION: 03-203 DATE: 1-30-22
NAME: Carlton Wright DOC#: 208902 DORM: ASSIGNMENT: —

Reason for request (be as **specific** as possible):
Can you please tell me if I currently have any seperatees on anybody? If I do, who Are they on my seperatees. If I don't have any current seperatees, then can you tell me have I ever requested any seperatees on anybody, but it got denied; and who was it on.

***DO NOT WRITE BELOW THIS LINE***

ACTION: That's confidential information. If you had requested a sep then the final decision would have been relayed. You do not have any current separatees.

BY: [signature] DATE: 2-4-22

Exhibit T

Exhibit T

INDIANA DEPARTMENT OF CORRECTIONS
REQUEST FOR INTERVIEW

S-502

TO: LOCATION: R.H.U. DATE: 3-6-22
NAME: Carlton Wright DOC#: 208902 DORM: 5 ASSIGNMENT: 502

Reason for request (be as **specific** as possible):
On Sunday March 6, 2022. I offender Wright (#208902) gave Sergeant Guthrie a filled out completed grievance complaint form, with Hannah Winningham's name on it. For him to turn that grievance into the outgoing nightly Mailbag. I also gave Sgt Guthrie a completed classification appeal form to be turned in too.

***DO NOT WRITE BELOW THIS LINE***

ACTION: Received forms, no further comment

BY: [signature] DATE: 3-6-22

State Form 36935 (R/4-91)

Exhibit U

III. DEFINITIONS:

For the purpose of this policy and administrative procedure, the following definitions are presented:

A. PROTECTIVE CUSTODY: A form of physical separation from the general offender population for offenders requesting or requiring protection from other offenders.

B. RESTRICTIVE STATUS HOUSING: A form of housing for offenders whose continued presence in the general population would pose a serious threat to life, property, self, staff, or other offenders, or to the security or orderly operation of a facility.

C. VERIFICATION: A review of available information or supporting documentation which either supports or does not support the need to separate or continue to separate an offender from general population (e.g. court documents, disciplinary hearing body results, investigative materials, or other written or verbal information).

IV. STANDARDS FOR ADMITTANCE TO A PROTECTIVE CUSTODY UNIT:

An offender may be admitted to protective custody only when there is documentation that protective custody is warranted and that no other reasonable placement alternative is available. The goal of each case of protective custody is to resolve the reasons for protective custody as quickly as possible and to end the use of protective custody as soon as possible.

A. An offender may request temporary assignment to a protective custody unit by contacting any staff person who shall:

1. Assist the offender in contacting the staff person designated by the Warden to review requests for protective custody.

2. Assist the offender in obtaining and completing State Form 24308, "Request for Protection."

3. The designated staff person shall review State Form 24308 to ensure adequate information is available for staff to verify the potential need for protective custody and discuss possible resolutions with the offender.

B. An offender may be temporarily assigned on an involuntary basis to protective custody by the Warden or designee for the following reasons:

1. Offender's safety;
2. Facility safety, security, and order; or,
3. Emergency situations.

An offender who is involuntarily assigned to protective custody shall be afforded all standards as provided in Policy and Administrative Procedure 01-04-101,"Adult Offender Classification."

Exhibit V

| GEO Secure Services | NEW CASTLE CORRECTIONAL FACILITY POLICY & PROCEDURE MANUAL<br><br>CHAPTER:<br>Special Management Offenders<br><br>TITLE:<br>Restrictive Housing Units Personal Protective Equipment | 'MBER:<br>11.007<br><br>SUPERSEDES:<br>9/20/2019<br><br>EFFECTIVE DATE:<br>7/1/2021 |
|---|---|---|
| REVIEW DATES: 11/7/2014, 6/15/2015, 8/31/2017, 3/20/2018, 9/2019, 3/23/2020, 6/3/2021 | | |
| ACA STANDARDS: N/A | | |

1. **PURPOSE:** To establish security and safety standards providing guidelines for the use of personal protective equipment for staff at New Castle Correctional Facility (NCCF). In addition, provides procedures for the interaction with offenders posing a safety risk. For the purpose of this policy and procedure, safety of staff and offenders is always our primary responsibility.

2. **POLICY:** The facility shall provide all staff assigned to the restrictive housing units with personal protective equipment that shall be suitable to meet the needs of the situation addressing sanitation and safety hazards. Personal protective equipment shall be required to be utilized by staff members when personal interaction with an offender posing a safety risk occurs. Staff shall follow all procedures set forth regarding the use of PPE when dealing with an offender posing a safety risk.

3. **DEFINITIONS:**

   3.1. Cuff Port Situation: Occurs when an offender refuses to remove any appendage from the cuff port when directed.

   3.2. Offender Posing a Safety Risk: Any offender whose actions determine they pose a potential safety risk to staff and require the use of PPE. This pertains to all offenders housed in the STAND, NCF, and NCP. Those offenders posing a safety risk shall be recognized by identifiers on the cell door.

   3.3. Personal Protective Equipment (PPE): Devices used or worn by staff to protect against hazards in the environment. Common examples are gloves, raincoats, face shields, spit masks, body shields and sand bags.

   3.4. Safety Risk:

   3.4.1. Exposure: Being exposed to bodily fluids or any unknown substances that have the potential to be hazardous to staff or other offenders.

   3.4.2. Flooding: Any act resulting in large amounts of liquid inundating the cell.

4. **PROCEDURE:**

   4.1. Whenever an offender shall be identified as posing a safety risk through previous actions and behaviors, identifiers shall be placed on the cell door. Any time that interaction occurs with such offender, staff is required to wear the necessary

| GEO Secure Services | NEW CASTLE CORRECTIONAL FACILITY POLICY & PROCEDURE MANUAL | NUMBER: 11.007 |
|---|---|---|

Exhibit V

4.5.5.2. Clothing is also to be physically searched for contraband;

4.5.5.3. Escort offender back inside cell;

4.5.5.4. Remove leg restraints;

4.5.5.5. Remove spit mask;

4.5.5.6. Instruct offender to face wall;

4.5.5.7. Staff exit room/secure door;

4.5.5.8. Position mobile/body shield;

4.5.5.9. Open mobile port/move body shield;

4.5.5.10. Open cuff port;

4.5.5.11. Remove lead restraints, handcuffs;

4.5.5.12. Close cuff port; and,

4.5.5.13. Exit area.

4.5.6. Mental Health Unit Monitoring: Any officer stationed in the OIC station shall be required to closely monitor all in-cell cameras paying particular attention to staff members making rounds or interacting with an offender. If at any point, it is perceived or determined an offender shall be holding or has placed nearby a suspicious object, the officer on the range shall need to be notified immediately.

4.6. Cuff Port Situations: Whenever an offender refuses to remove an appendage from the cuff port, at no point should an officer try to force the offender to remove the appendage. After verbal direction, if the offender continues to refuse to move, the officer backs away and notifies the supervisor. If verbal directives continue to be ineffective, permission to use chemical agents should be requested. As indicated in NCCF 08.013, *Use of Force*, planned use of force requires authorization from the Facility Administrator or designee. Prior to use of chemical agents, a video recorder shall be required to document the event. If approved for use, chemical agents are to be utilized per training and use of force continuum.

4.7. Video Recording: Each time interaction occurs with an offender posing a safety risk utilizing the body shield shall be required to video record the interaction in its entirety with the exception of shower time.

4.8. Sandbags: Any time an offender posing a safety risk attempts to flood or push liquids outside his cell, sandbags may be placed against the door outside the cell to hinder such liquid from coming onto the range.

4.9. Equipment Storage: All personal protective equipment and sand bags shall be stored in the designated area on each unit. A daily inventory of the personal protective equipment shall be completed on each unit.

4.9.1. In the STAND unit, all personal protective equipment shall be stored in the janitor's closet in the main hallway.

Pg 2 of 4

4.9.2. NCF units shall store all personal protective equipment in a secured locations

Exhibit V

personal protective equipment to guard against safety hazards.

4.2. Identification: An offender shall be identified as posing a safety risk, when through verbal communication and/or physical actions, they threaten to harm staff, other offenders or themselves. An offender may also pose a safety risk if they commit any act that constitutes disorderly conduct violation (i.e. covering windows) or it is believed they possess a potential weapon. Any offender found guilty of battery with bodily fluids shall be required to wear a spit mask for a minimum of thirty (30) days anytime the offender is out of the confines of his cell. Any supervisor shall have the authority to identify an offender as posing a safety risk. An offender shall be identified as posing a safety risk by placing a warning sign on the outside of the door (see attachment A).

4.3. Documentation: Offenders identified as posing a safety risk during the shift shall be documented on the shift report and the unit log book. A short description should be included on each document indicating the actions of the offender resulting as their being identified as a safety risk. After each shift, an update on each offender posing a safety risk shall be logged on the shift report and the unit log book, making specific notation of any behaviors indicating the offender continues to pose a safety risk. In addition, verbal communication shall be required on each offender posing a safety risk at the shift pass down during shift change. The communication should emphasize any actions or noted behaviors by offenders posing as safety risks. This communication should be documented in the unit log.

4.4. Housing: Offenders posing safety risks shall be placed in certain identified cells/areas on each unit whenever possible.

4.4.1. STAND unit offenders posing safety risks shall be placed in O3 in cells in order of placement 116, 109 & 108.

4.4.2. NCF units shall utilize cells 501-504, first preference to remove the disruptive behavior/safety risk from the remainder of the offender population in RHU. 112, 113, 312, and 313 are a last resort if 500 range is full or utilized for other offender observations or those posing a safety risk to the unit and facility.

4.4.3. NCP offenders may be placed in a safe room, i.e. 217, 817, 117, or 717 or an observation room, i.e. 417, 617, 317, or 517. Authorization to be placed in these rooms shall be determined by a mental health professional (MHP), psychologist, or psychiatrist for mental health issues. The lieutenant, shift supervisor, unit team manager (UTM), duty officer, or above for security reasons. If the offender is more of a behavioral safety risk, they also may be assigned to stripped cells, i.e. 702, 703, 714, or 715. A staff member with the rank of sergeant or above can place an offender on a restrictive status for twenty four (24) hours or forty eight (48) hours with the Facility Administrator's (or designee) approval.

4.5 Official Interaction with Safety Risk Offenders:

4.5.1. Cell Door & Cuff Port Activity: Interacting with an offender solely behind a closed door and through the cuff port. Three (3) staff members shall be required to be present. All staff members present are required to wear rain

Exhibit V

| GEO | NEW CASTLE CORRECTIONAL FACILITY POLICY & PROCEDURE MANUAL | NUMBER: 11.007 |
|---|---|---|

inside RHU control room.

4.9.3. NCP shall have QRT and cell extraction team equipment kept on the 500/700 range in a secured room. Face shields and raincoats shall be located on 500/700 and 600/800 ranges. Gloves shall be kept on each range, and spit masks are secured in the sergeant's office.

4.10. Notification: Each time interactions occurs with an offender posing a safety risk, the captain/lieutenant of the unit should be notified verbally if on shift. All interactions with offenders posing a safety risk shall be documented in writing via the shift report. Any time interaction occurs resulting in an injury, the captain/lieutenant of the shift and of the unit should be verbally notified immediately and an incident report should be completed by the end of shift.

4.11. Injury Reporting: At any point an injury occurs, regardless of significance, a verbal report shall be made immediately to the shift supervisor with a written incident report to be completed prior to shift end.

4.12. Review: On a weekly basis, the status of an offender shall be reviewed by the unit team manager and captain/lieutenant of the unit. They shall determine if the offender continues to pose a safety risk. After the initial review, NCN an NCF units shall complete an *Adult Restricted Status Housing Restrictions Report,* SF 16050 daily when the offender poses a safety risk. If the offender no longer poses a safety risk, the procedures outlined above can desist and the offender shall return to normal ARS/DRS status with notifications being made to all shifts. If the offender continues to pose a safety risk, procedures shall continue until next review.

5. **APPLICABILITY:** This policy and accompanying procedure shall be applicable to all NCCF staff and offenders and shall remain in effect until modified, revised, or rescinded by the Facility Administrator or designee.

[signature] 6-15-2021

POLICY OWNER DATE

[signature] 6-18-21

FACILITY ADMINISTRATOR DATE

# NOTICE TO LAY ADVOCATE / WITNESS

State Form 35447 (R7 / 3-19)
INDIANA DEPARTMENT OF CORRECTION

Exhibit W

| Name of offender | DOC number | Case number |
|---|---|---|
| Wright, Carlton | 208902 | NCN-22-02-0006 |
| **Offense** | **Code number** | **Date of alleged offense** *(month, day, year)* |
| Refusing An Assignment | 356 | 2-2-22 |

☐ **LAY ADVOCATE**

| Name of requested lay advocate | DOC number | Housing unit |
|---|---|---|
| | | |

The above-named offender has requested your assistance as Lay Advocate in a Disciplinary Hearing. As the Lay Advocate, you will assist the accused offender in the preparation of the case and you may be requested to assist in an appeal of this case. You are not required to represent this offender as a Lay Advocate.

☐ I AGREE to be Lay Advocate. ☐ I REFUSE to be Lay Advocate.

| Signature | Date *(month, day, year)* | Witness | Date *(month, day, year)* |
|---|---|---|---|
| | | | |

☐ LAY ADVOCATE WAS DENIED. *Explain reason for denial.*

Prior to offender Wright coming to segregation, is it true that he was housed in the same pod & rec line as offender Dorsey; Dorsey being the same offender he fought back in June?

☐ **WITNESS**

| Name of witness | DOC number *(if applicable)* | Housing unit *(if applicable)* |
|---|---|---|
| Lt. Outlaw | — | — |

You have been requested by the above-named offender to appear as a witness and testify as to your knowledge of the above-named alleged violation of the Appropriate Disciplinary Code. If you do not appear, you must give a written statement as to your knowledge of this alleged offense. Whether you appear in person or provide a written statement, you are required to tell the truth or be subject to disciplinary action.

☐ STATEMENT OF WITNESS TAKEN AT DISCIPLINARY HEARING *(PREFERED)*.

☑ WRITTEN STATEMENT IN LIEU OF WITNESS APPEARING AT HEARING.

Yes, this is true.

* copy given to offender 2-8-22

**The written statement is a true and accurate summary of my knowledge of the incident.**

| Signature | Date *(month, day, year)* | Witness | Date *(month, day, year)* |
|---|---|---|---|
| [signature] | 2-8-22 | | |

WITNESS DID NOT APPEAR AT HEARING. *Explain reason witness did not appear.*

| Name of staff person recording witness statement | Title | Date *(month, day, year)* |
|---|---|---|
| | | |

**DISTRIBUTION:** Original - Facility Packet; Copy - Central Office Packet; Copy - Offender

NCN 21-06-0008

Exhibit X

CONFIDENTIAL

# Medical Report on Injuries/Non-Injuries

Last Name: Wright First Name: Carlton Middle Name: ______

Date of Birth: 9 / 10 / 84 Inmate Number: 208902

Date of Incident: 6/2/21 Time: Noon ☐ A.M ☑ P.M. Place: MI Rec Pad

Was it necessary to notify physician? ☐ Yes ☑ No Time of Incident: ______

Name of physician: ______

Type of Incident: ☑ Fighting ______ ☐ Use of Force ______

Other: ______

Injuries/ Non-Injuries: ______

Head Area Examined: ______

Face area Examined: ______

Chest Area Examined: ______

Back Area Examined: ______

Arms Area Examined: LFA abrasion, says wrist hurts but obvious injury not noted.

Legs Area Examined: Ⓛ great toe nail bent + cracked

Illustrate on the diagram position or place of injury, if any




This injury is: (CIRCLE ONE)

REPORTABLE NON-REPORTABLE

LAY-IN DATE

START ______ STOP ______



Date: 6/2/21 Time: 2:41 p A.M. (P.M.) Signed: [signature]

WRIGHT_000196

NCN 21-06-0008

Exhibit D

# SIR Description

**Date:** 6/2/2021

**Time:** 1158 hours

**Incident type: Inmate on Inmate Fights**

CONFIDENTIAL

**Location: M unit outside recreation pad**

**SIR N/A**

**List of staff involved: Captain V. Gard, Officer S Leech, Case Manager K. Grinstead and Case Manager C. Bookout**

**List of offenders involved (include DOC #): Offender Carlton Wright DOC 208902 and Offender Elisha Dorsey DOC 273728**

**Detailed narrative of incident:** On 6-2-21 at approximately 1400 hrs. Lieutenant M. Krul was reviewing video of M1 recreation and found what appeared to be a fight. Offender Carlton Wright DOC 208902 (African American Male) M1-114 and Offender Elisha Dorsey DOC 273728 (African American Male) M1-116 both came out of their cell for recreation at 1158 hrs. Wright went out to the outside recreation pad to wait for Dorsey. Both put arms up and took a defensive stance and began punching at each other. After finding video both offenders were placed in mechanical restraints and escorted to the facility nurse for evaluation. Offender Dorsey sustained a swollen lip on left side and cheek had some redness. Offender Wright has small lip abrasion and states his wrist and toe hurts. Both offenders will be written up for fighting and were placed in RHU O3. There were no injuries to any staff

Facility Administrator M. Sevier, Assistant Facility Administrator S. Fitch and Major R. Davis will be notified by email at 1530 hrs.

pg 1 of 3 pgs. Also, a two page affidavit included as evidence from Andrew (120099) Shafer

**OFFENDER GRIEVANCE**
State Form 45471 (R5 / 3-20)
DEPARTMENT OF CORRECTION

| FOR OFFICIAL USE ONLY |
|---|
| Grievance number: 125710 |

| To: | Facility | Date (month, day, year) |
|---|---|---|
| **Facility Grievance Specialist** | N.C.C.F | 3-25-21 |

| From (name of offender) | DOC number | Signature of offender |
|---|---|---|
| Carlton Wright | 208902 | Carlton Wright |

| Housing assignment | Date of incident (month, day, year) |
|---|---|
| M1-206 (annex) | 3-18-21 |

Provide a brief, clear statement of your complaint or concern. Include any information that may assist staff in responding to your grievance.
(**NOTE**: A Single ONE-sided sheet of paper may be attached if necessary to explain your grievance.)

This grievance is regarding correctional officer Dunn on 1st team, that works mainly, in O-unit of the annex. This is pertaining to his very, extremely unprofessional behavior, and inexcusable actions that are truly unbecoming of an officer. On 3-18-21, at approx 11:30 am, my cellie Andrew Shafer, 120099 was taken to 3pod in O-unit of the annex for several hours by Sgt. Lee, c/o Hinsley, and c/o Dunn, due to a signal being called on him in 1pod in M-unit by c/o Arnold. So they escorted my cellie over there. I guesse just as a precaution, and to sort everything out concerning that issue of the signal being called. While my cellie (Shafer) was over in three pod in O-unit, he was placed in one of the lower showers for several hours just hanging out waiting for things to be sorted out. During his stay in the showers, c/o Dunn approached him, and initiated a conversation with him regarding me. Once my cellie returned back (see attached →)

Exhibit Y

State the relief that you are seeking.

For there to be a full investigation into this incident. To not have my personal confidential information Shared with other offenders by staff members. To be Kept seperate from c/o Dunn, and to not be anywhere around him. For c/o Dunn to participat in some type of sensitivity classes. To feel safe, and not be put in danger or harm's way by staff members. I want a keep away, from me and c/o Dunn, I don't feel safe around him.

| Signature of Facility Grievance Specialist | Date (month, day, year) |
|---|---|
| H. Wunningham | 4/8/21 |

**DISTRIBUTION:** Original – Grievance Specialist; Copy – Offender; Copy – Offender Packet; Copy – IRIS

RECEIVED 3/31/21

Pg. 1 of 4 pgs, Plus a A sworn Attidavit from Carlton Wright, is also included with this grievance.

**OFFENDER GRIEVANCE**
State Form 45471 (R5 / 3-20)
DEPARTMENT OF CORRECTION

| FOR OFFICIAL USE ONLY |
|---|
| Grievance number |

| To: | Facility | Date (month, day, year) |
|---|---|---|
| **Facility Grievance Specialist** | N C.C.F | 4-8-21 |

| From (name of offender) | DOC number | Signature of offender |
|---|---|---|
| Carlton Wright | 208902 | Carlton Wright |

| Housing assignment | Date of incident (month, day, year) |
|---|---|
| M2-206 (annex) | 4-1-21 |

Provide a brief, clear statement of your complaint or concern. Include any information that may assist staff in responding to your grievance. (**NOTE**: A Single ONE-sided sheet of paper may be attached if necessary to explain your grievance.)

This grievance is pertaining to officer Dunn (of 1st tea that works primarily in O-unit of the annex) and in connection to another prior grievance that I filed on him, on 3-25-21. This is another seperate incident pertaining to c/o Dunn, that transpired on 4-1-21. This grievance is also including a P.R.E.A. complaint agains c/o Dunn that also took place on 4-1-21. So can you please direct the P.R.E.A. complaint to the appropiate department for me. Everything regarding that will be explained in here. I'd prefer if you File this grievance under its own grievance number, but if you do decide and insist on joining this grievance together under the same grievance number (as you've done before with other grievances I've filed) for the other grievance complaint that I submitted on c/o Dunn on 3-25-21 (which I'm still waiting to receive a confirmation receipt indicating its been filed), then I guesse that I have no choice. However though, I do want (see attache

State the relief that you are seeking.

I want for there to be a full and thorough impartial and unbias investigation into this matter. To feel safe and secure, and not threathen by c/o Dunn. For c/o Dunn to participate in some type of program or sensitivity class, to help him become a better officer and professional. I want a seperatee from c/o Dunn immediately.

| Signature of Facility Grievance Specialist | Date (month, day, year) |
|---|---|
| | |

Exhibit Z

SUPP-C.Wright000008

**DISTRIBUTION:** Original – Grievance Specialist; Copy – Offender; Copy – Offender Packet; Copy – IRIS

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CARLTON WRIGHT, Plaintiff, | ) | |
| | ) | CASE NO. 1:23-cv-00459-TWP-MKK |
| vs. | ) | |
| SHANE NELSON, CECIL, KRUL, GARD, SAYE, LEE, DUNN, FOLEY, B. LEACH, DUNLAP, and MYERS Defendants. | ) | Exhibit #1 |

**RESPONSE TO PLAINTIFF'S FIRST SET**
**OF INTERROGATORIES TO DEFENDANT**

Defendant, Officer Myers, with counsel, Joseph T. Lipps, responds to *Plaintiff's First Interrogatories* as follows:

1.) Please identify all positions and titles, with corresponding dates of employment, that you have held as an employee at New Castle Corr. Fac, and describe your job responsibility for each position and title.

**RESPONSE:**

I, Officer Myers, have held various positions here at New Castle Correctional Facility in the past six years. I have served as a correctional officer from 2018-2019 and then again from 2020-2024. As a

C. Per policy, what is the purpose of doing a "pipe check", or either "making a round" on the housing unit? Can you please explain detail.

**RESPONSE:**

Generally, yes. Pipe checks were used for areas like segregation and mental health. Officers would take a pipe and tap the door showing that they had checked on these individuals that are locked in their rooms every 30 minutes.

b. In the housing units, we were asked to do a round at various intervals every hour.

c. To check on safety and security of inmates.

4. As an officer, is it your job responsibility to keep and make sure that all offenders are safe?

**RESPONSE:**

Generally, yes.

Exhibit #1

8. On a typical normal day when the recreational lines are being run in M-unit, how many floor officers are there?

B.) On the date of June 2, 2021 when the attack on the Plaintiff happen by offender Dorsey on the inside rec pad, how many floor officers were working in M-unit that day?

C. How many floor officers does it require to run recreational lines in M-unit?

D. Have you been properly trained and educated on how to conduct safety and security checks on the housing units while recreational lines are going on?

**RESPONSE:**

One to two officers and an assistant supervisor.

b. I do not recall.

c. Two and a sergeant is suggested.

d. Yes.

Exhibit #1

9.) Is there an officer's office/officer's bubble inside of M-unit?

B.) Inside this officer's office located in M-unit, are there a video screen(s) that's able to watch and monitor the live footage from the cameras recording

the activity on the ranges (units)?

C.) Is there an officer thats suppose to be in the officer's office watching and monitoring these cameras and activity of the ranges at all times?

D.) Are there cameras located on the inside recreational pad on One Range where the attack on the plaintiff happened at by offender Dorsey?

E.) Is the live camera footage from the inside recreational pad on One Range able to be seen and viewed on the screen inside the officer's office located in M-unit?

**RESPONSE:**

Yes.

b. Yes. I screen to watch multiple screens if you scroll through each screen.

c. In the bubble, yes.

d. I am not authorized by the IDOC to disclose camera locations. Please advise if this information will still be sought after receiving this information so I can seek clarification and a protective order from the Court.

e. I am not authorized by the IDOC to disclose this information. Please advise if this information will still be sought after receiving this information so I can seek clarification and a protective order from the Court.

Exhibit #1

12.) Is it your job responsibility to prevent offenders from harming one another, or either to intervine and stop it from happening if it occurs?

B.) If you do see offenders involved in a physical altercation harming one another, what are you suppose to do regarding that situation per policy? Please explain in detail each step.

**RESPONSE:**

Generally, yes.

b. Objection, request calls for a hypothetical which I cannot answer truthfully under oath.

13.) Why wasn't this thirty seven minute long assault on the Plaintiff stopped or intervened by you, or by any one of the other five floor officers?

**RESPONSE:**

Please see response to # 10.

Exhibit #1

**I affirm, under the penalties of perjury, that the foregoing responses are true and accurate to the best of my knowledge and information.**

Signature: [signature]

Printed: J. Myers

Exhibit #1

pg 1 of, 7 pgs. I would like to have a written statement from Sgt. Turley and c/o Gard (both of night shift 1st team and also from c/o Foley (day shift 1st team) as it pertains to this.

Exhibit #3 pg 1 of 2

**OFFENDER GRIEVANCE**
State Form 45471 (R5 / 3-20)
DEPARTMENT OF CORRECTION

| FOR OFFICIAL USE ONLY |
| --- |
| Grievance number: 128906 |

| To: | Facility | Date *(month, day, year)* |
| --- | --- | --- |
| **Facility Grievance Specialist** | N.C.C.F. | 6-8-21 |

| From *(name of offender)* | DOC number | Signature of offender |
| --- | --- | --- |
| Carlton Wright | 208902 | Carlton Wright |

| Housing assignment | Date of incident *(month, day, year)* |
| --- | --- |
| D3-214 (Annex) | 4-5-21, 5-27-21, 6-1-21 |

Provide a brief, clear statement of your complaint or concern. Include any information that may assist staff in responding to your grievance.
*(**NOTE**: A Single ONE-sided sheet of paper may be attached if necessary to explain your grievance.)*

I would like to request to preserve all video footage from the camera, from the dates of 4-5-21, and 6-1-21; as it's mentioned in this grievance and pertains to this. Also, I would like for this grievance to be filed seperately under its own grievance number, then from my other grievance submitted concerning the fight related to this. I'd like for these issues to be addressed seperately, as they are concerning different staff members; thank you. This grievance is pertaining to U.T.M. S. Nelson, and also to Counselor J. Jones, both of M-unit in the annex. Regarding their actions of deliberate indifference towards me, by knowingly and intentionally placing my life in danger, and putting me in harm's way. ~~(see attached)~~

State the relief that you are seeking.

For Counselor Jones, and U.T.M. S. Nelson to be held accountable for their unprofessional actions. For them to stop retaliating against me. I want a seperattee from offender Dorsey.

| Signature of Facility Grievance Specialist | Date *(month, day, year)* |
| --- | --- |
| [signature] | 6/17/21 |

DISTRIBUTION: Original - Grievance Specialist; Copy - Offender; Copy - Offender Packet; Copy - IRIS

pg 1 of 3pgs.

I would like to [illegible] all the officers who were on duty that day. Sgt. Say, c/o Dunlop, c/o Myers, and c/o Leach all of 2nd team

**OFFENDER GRIEVANCE**
State Form 45471 (R5 / 3-20)
DEPARTMENT OF CORRECTION

| FOR OFFICIAL USE ONLY |
|---|
| Grievance number: 128903 |

| | | |
|---|---|---|
| To: **Facility Grievance Specialist** | Facility: N.C.C.F. | Date *(month, day, year)*: 6-8-21 |
| From *(name of offender)*: Carlton Wright | DOC number: 208902 | Signature of offender: Carlton Wright |
| Housing assignment: 03-214 (annex) | | Date of incident *(month, day, year)*: 6-2-21 |

Provide a brief, clear statement of your complaint or concern. Include any information that may assist staff in responding to your grievance. (**NOTE**: *A Single ONE-sided sheet of paper may be attached if necessary to explain your grievance.*) I would like to request to preserve all video footage from the camera, from the date of 6-2-21; as it's mentioned in this grievance and pertains to this. I'd like the footage on that date, from the time of 11:55 am, to 12:40 pm. Also, I would like for this grievance to be filed seperately under its own grievance number, then from any other grievance submitted concerning Counselor Jones / UTM Nelson being deliberate indifferent. I'd like for those issues to be addressed seperately, as they are concerning different staff. This grievance is pertaining to the date of 6-2-21, at approx: 11:58 am - 12:36 pm, when I was involved in a fight with offender Dorsey on the rec pad of one unit (pod) in M-unit of the annex. (see attached)

State the relief that you are seeking.
For these officers to be held accountable for their actions, or rather, lack thereof. For these staff members to undergo better training regarding this issue of helping to keep inmates safe. I want a seperattee from offender Dorsey.

| | |
|---|---|
| Signature of Facility Grievance Specialist: H. Wunningham | Date *(month, day, year)*: 6/17/21 |

**DISTRIBUTION:** Original – Grievance Specialist; Copy – Offender; Copy – Offender Packet; Copy – IRIS

Exhibit #3 pg 2 of 8

Case 1:23-cv-00459-TWP-MKK Document 2-1 Filed 03/13/23 Page 30 of 61 PageID #: 425

Exhibit # 20

2. Lacks close family/friends in community. No

3. Experienced a significant loss within last 6 months (loss of job, relationship, death of close family member). Yes

4. Worried about major problems other than legal situation (terminal illness). Yes

5. Family member or significant other has attempted or committed suicide (spouse, parent, sibling, close friend, and lover). No

6. Has psychiatric history (psychotropic medication or treatment). Yes

7. Holds position of respect in community (i.e., professional, public official) and/or alleged crime is shocking in nature. Expresses feelings of embarrassment/shame. No

8. Expresses thoughts about killing self. No

9. Has a suicide plan and/or suicide instrument in possession. No

10. Has previous suicide attempts. (Note methods and dates). No

11. Expresses feelings there is nothing to look forward to in the future (feelings of helplessness and hopelessness). Yes

12. Shows signs of depression (crying, emotional flatness). Yes

13. Appears overly anxious, afraid or angry. Yes

14. Appears to feel unusually embarrassed or ashamed. Yes

15. Is acting and/or talking in a strange manner. Cannot focus attention; hearing or seeing things not there). No

16. History of substance abuse treatment? Yes

17. Is apparently under the influence of alcohol or drugs. No

18. If YES to #17, is individual incoherent or showing signs of withdrawal or mental illness. No

Total Yes's: 8

Comments:
3-Aunt passed, 4-Refused to say, 6-Refused to say, 11-14-says depression, anxious, angry, and needs to see MH, 16-on streets

**Comments**

Fighting-seg placement. Red abrasion LFA, L great toenail bent/cracked. Denies SI/HI. MH notified of placement et body sheet provided to custody. Cust. to get KOP's from property.

Case 1:23-cv-00459-TWP-MKK Document 2-1 Filed 03/14/23 Page 31 of 61 PageID #: 126

Exhibit # 21

**State of Indiana**
**Department of Correction**

Division of Medical and Clinical Healthcare Services
Indiana Government Center South
302 W. Washington Street
Indianapolis, IN 46204

**Facility: NCF**

| | |
|---|---|
| PATIENT: | CARLTON WRIGHT |
| DATE OF BIRTH: | 09/10/1984 |
| DOC #: | 208902 |
| DATE: | 07/17/2021 6:26 PM |
| VISIT TYPE: | Nurse Visit |

## Nurse Visit

Reason for visit: Sick Call Sick Visit.
HCR#: 515379

Statement of complaint (in patient's words): "I am still experiencing a whole lot of pan and discomfort in my left wrist from the fight I had on 6/2/21 ... ."

### Vital Signs

**Blood Pressure**

| Time | BP mm/Hg | Position | Side | Site | Method | Cuff Size |
|---|---|---|---|---|---|---|
| 6:29 PM | 129/89 | sitting | | brachial | manual | |

**Temperature/Pulse/Respiration**

| Time | Temp F | Temp C | Temp Site | Pulse/min | Pattern | Resp/ min |
|---|---|---|---|---|---|---|
| 6:29 PM | | | | 73 | | 18 |

**Pulse Oximetry/FIO2**

| Time | Pulse Ox (Rest %) | Pulse Ox (Amb %) | O2 Sat | O2 L/Min | Timing | FiO2 % | L/min | Delivery Method | Finger Probe |
|---|---|---|---|---|---|---|---|---|---|
| 6:29 PM | 98 | | | | | | | | |

**Comments**

| Time | Comments |
|---|---|
| 6:29 PM | No temperature equipment. |

**Measured By**

| Time | Measured by |
|---|---|
| 6:29 PM | Jami Ferrell, RN |

| # | Detail Type | Description |
|---|---|---|
| 1. | Assessment | Wrist sprain (842.00). |
| | Impression | Lt wrist. Tylenol for pain relief. Ibuprofen 600mg Take 3 tabs very 8 hours prn for pain from the commissary. Wrist splint. |

Exhibit #22

Medications *(Added, Continued or Stopped this visit)*

| Start Date | Medication | Directions | PRN Status | PRN Reason | Instruction | Stop Date |
|---|---|---|---|---|---|---|
| 02/26/2021 | Cymbalta 30 mg capsule,delayed release | take 1 capsule by oral route 2 times every day | N | | | 08/24/2021 |
| 03/30/2021 | lisinopril 40 mg tablet | take 1 tablet by oral route every day | N | | | 09/25/2021 |
| 07/22/2021 | Tylenol Extra Strength 500 mg tablet | take 2 tablet by oral route every 4 - 6 hours as needed not to exceed 8 tablets per 24hrs | N | | | 09/01/2021 |

*Provider:*

Nwannunu, John M 07/23/2021 7:49 AM

*Document generated by:* John M. Nwannunu, MD 07/23/2021 07:48 AM

Indiana Government Center South
302 W. Washington Street
Indianapolis, IN 46204

Exhibit #23

# DEPARTMENT OF CORRECTIONS
## ADMINISTRATIVE NOTE

**SITE: NCF**
**COMPLETED BY: Nicolle Courtney, MA 08/12/2021 3:01 PM**

**State of Indiana**
**Department of Correction**

Division of Medical and Clinical Healthcare Services
Indiana Government Center South
302 W. Washington Street
Indianapolis, IN 46204

**Facility: NCF**

| | |
|---|---|
| PATIENT: | CARLTON WRIGHT |
| DATE OF BIRTH: | 09/10/1984 |
| DOC #: | 208902 |
| DATE: | 08/12/2021 3:01 PM |
| VISIT TYPE: | Administrative Note |

### Additional comments

Wrist splint provided as ordered.

**Provider: John M. Nwannunu MD**
**Document generated by: Nicolle Courtney, MA 08/12/2021 03:01 PM**

---

Indiana Government Center South
302 W. Washington Street
Indianapolis, IN 46204

# DEPARTMENT OF CORRECTIONS
# BEHAVIORAL HEALTH SEGREGATION VISIT

**SITE: ISR**

**COMPLETED BY: Akilah Lamar, Psy.D** **06/17/2022 2:49 PM**

Exhibit #42

**State of Indiana**

Department of Correction

Division of Medical and Clinical Healthcare Services

Indiana Government Center South
302 W. Washington Street
Indianapolis, IN 46204

**Facility: ISR**

| | |
|---|---|
| PATIENT: | CARLTON WRIGHT |
| DATE OF BIRTH: | 09/10/1984 |
| DOC #: | 208902 |
| DATE: | 06/17/2022 2:49 PM |
| VISIT TYPE: | Restrictive Housing Documentation |

| | |
|---|---|
| **Date placed** | 05/26/2021 |
| **Time placed** | : |

**Restrictive Housing visit - Ongoing**

**Subjective**

**Reason for placement** Pt. was seen for ooc visit after submitting a HCRF. He stated he continues to struggle with symptoms of PTSD due to incidents that took place at previous facility. He stated he often has a negative reaction to officers without any identifiable cause. He stated also stated he continues to experience nightmares that interfere with his sleep most nights. This writer discussed with pt. healthy means of coping with triggers in his environment and developing a healthy sleep routine. He was receptive to this feedback. He did not report any current thoughts of self harm or suicidal ideation. Pt. will be referred to psychiatry to determine if psych meds are appropriate at this time. Mental health will continue to follow up as needed.

**Objective**

**Current mental health status**

Mental Status Exam

**General Observations**

Generally normal
Appearance: Within normal limits
Build/Stature: Within normal limits
Posture: Within normal limits
Eye Contact: Average
Activity: Within normal limits
Attitude toward examiner: Cooperative
Attitude toward parent/guardian: Not Applicable
Separation (for children/adolescent): Not applicable

State of Indiana
Department of Correction

Division of Medical and Clinical Healthcare Services
Indiana Government Center South
302 W. Washington Street
Indianapolis, IN 46204

**Facility: ISR**

| | |
|---|---|
| PATIENT: | CARLTON WRIGHT |
| DATE OF BIRTH: | 09/10/1984 |
| DOC #: | 208902 |
| DATE: | 07/12/2022 10:41 AM |
| VISIT TYPE: | Medication Management without Psychotherapy |

## Psychopharm

Exhibit #43

### Individuals Present

Contact type: Onsite

Individual present

Support Resources

| Full Name | Relationship | Home Phone | Work Phone | Effective Date | End Date | Comments |
|---|---|---|---|---|---|---|

### Prescriber's Evaluation

Chief Complaint: can't sleep, anxious, reliving traumatic events

Informant: patient, EMR review, multidisciplinary staffing for collateral report.

History of Present Psychiatric Illness/HPI:
Pt is a 37 year old black male who was referred by Dr. Lamar for medication evaluation. Upon assessment, he is in PC. Was transferred from NCF 4/2022. Reports to have been in PC for 7 years. He reports while being in NCF, from 1/2021-4/2022 he was assaulted on more than one occasion by COs and was repeatedly harassed. Says he was involved in a 37 minute fight on camera that was not stopped, had poop thrown at him on camera and also had food poisoning. He mentions a PREA incident, although did not go into detail about this. He came to ISR 4/2022 and is struggling with sleep and anxiety- has night terrors, wakes up sweaty, panicked, talks in his sleep, is scared to go back to sleep so will try to stay awake. Averages 3-6 hours interrupted sleep. Paranoid about staff, hypervigilant, lacks trust, irritable. Notes his was of coping is to get angry/aggressive towards staff to protect himself. He recognizes this to be unhealthy and says "the ones here haven't done anything to me, but I vividly relive the situation I was in before and group them altogether". Feels helpless, "I don't know how to shake it". He does write and talk to his family to help him cope. No SI/HI. No psychosis.

Case 1:23-cv-00459-TWP-MKK Document 2-1 Filed 03/14/23 Page 58 of 61 PageID #: 453

**State of Indiana**

Department of Correction

Division of Medical and Clinical Healthcare Services

Indiana Government Center South
302 W. Washington Street
Indianapolis, IN 46204

**Facility: ISR**

| | |
|---|---|
| PATIENT: | CARLTON WRIGHT |
| DATE OF BIRTH: | 09/10/1984 |
| DOC #: | 208902 |
| DATE: | 08/02/2022 11:41 AM |
| VISIT TYPE: | Medication Management without Psychotherapy |

**Psychopharm**

Exhibit # 44

**Individuals Present**

Contact type: Onsite

Individual present

Support Resources

| Full Name | Relationship | Home Phone | Work Phone | Effective Date | End Date | Comments |
|---|---|---|---|---|---|---|

**Prescriber's Evaluation**

Patient is a 37 year old black male with past psychiatric history of PTSD who was seen and assessed for medication management follow-up. He was last seen on 7/12/2022 and that time was started on Prazosin 1mg QHS.

Patient staffed in a multidisciplinary approach. History obtained from patient, team, and EHR.

HPI: Patient stopped me as I was in RCH seeing other ofds. Upon assessment, patient reports to be tolerating Prazosin, although hasn't noticed any improvement or change in his symptoms. He denies having side effects. Ongoing struggles with sleep and anxiety- has night terrors, wakes up sweaty, panicked, talks in his sleep, is scared to go back to sleep so will try to stay awake. Remains paranoid about staff, hypervigilant, lacks trust, irritable at times.

Incarcerated since: 2009
Tentative release: 2034

History of drug/alcohol use:
Current drug/alcohol use: denies

Medical history: chronic pain/neuropathy secondary to GSW in back, HTN

# DEPARTMENT OF CORRECTIONS
# BEHAVIORAL HEALTH SEGREGATION VISIT

**SITE: ISR**
**COMPLETED BY: Akilah Lamar, Psy.D 08/04/2022 1:39 PM**

Exhibit #45

**State of Indiana**
**Department of Correction**

Division of Medical and Clinical Healthcare Services
Indiana Government Center South
302 W. Washington Street
Indianapolis, IN 46204

**Facility: ISR**

| | |
|---|---|
| PATIENT: | CARLTON WRIGHT |
| DATE OF BIRTH: | 09/10/1984 |
| DOC #: | 208902 |
| DATE: | 08/04/2022 1:39 PM |
| VISIT TYPE: | Restrictive Housing Documentation |

**Date placed** 05/26/2021
**Time placed** :

**Restrictive Housing visit - Ongoing**

**Subjective**

**Reason for placement** Pt. was seen for ooc visit for HCR. He stated he saw psychiatry and started medication a few weeks ago but has yet to notice any effects from the medication. This writer informed pt. that it can take several weeks for him to notice any changes with the medication. He stated he continues to struggle with nightmares and negative thoughts/responses to offices based on previous experiences. He stated he tries to utilize healthy coping skills to manage the changes in his mood and lack of sleep as much as possible. He stated he does find it beneficial to speak with mental health as another form of coping with symptoms of PTSD. Pt. was informed that since he is now prescribed psych meds, his mental health code will be changed to a C code. Pt. also has a dx of PTSD. IAP and RHR have been updated to reflect changes. Pt. still does not meet criteria for SMI. Pt. will now be seen for weekly mh rounds and monthly ooc visits.

**Objective**

**Current mental health status**

Mental Status Exam

### General Observations

Generally normal
Appearance: Within normal limits
Build/Stature: Within normal limits
Posture: Within normal limits
Eye Contact: Average
Activity: Within normal limits
Attitude toward examiner: Cooperative
Attitude toward parent/guardian: Not Applicable

Affect: restricted
Speech: clear, normal volume/rate/tone
Thought content: no SI/HI/AVH
Thought Process: logical, goal-directed, future orientated
Cognition: intact, AO x4
Insight: fair
Judgment: fair

Exhibit #40

Risk Assessment:
Patient denies current suicidal or homicidal ideation, intent, method or plan. Suicide precautions do not appear to be necessary for this patient at this time.

Assessment/medical decision making:
He does meet criteria for PTSD. We discussed treatment options and will start Prazosin for related symptoms.

Plan:
-Prazosin 1mg QHS
-Reviewed risks, benefits, indication, side effect profile, and alternative of above recommendations
-Patient agreeable as participated in shared decision making
-Patient signed consent to treat form and hard copy is in the medical chart.

Therapy:
-Continued to encourage engagement in individual therapy on a regular basis

Labs:
-No indication

AIMS:
-No indication.

RTC in 30 days with psychiatry or sooner as needed.

## Medication Information

## Assessment/Diagnosis

AXIS I & II

| # | Axis | Description | |
|---|---|---|---|
| 1 | Axis I | Posttraumatic stress disorder (309.81) | Impression/Differential Dx |

AXIS IV
Severity: Mild

AXIS V
Current GAF: 70
Date: 04/20/2016.

Medications: reviewed from other providers

Exhibit # 47

Vital signs reviewed

Medications: reviewed. Denies side effects or non-adherence

Previous medications trials: Pamelor, Trileptal, Cymbalta (all for pain issues)

Energy: fair
Sleep: inadequate, nightmares
Appetite: intact
Impulsivity: no issue
Aggression: denies
SI/SIB/HI: denies

Psychiatry ROS:
Depression: denies feeling sad or depressed
Anxiety: admits to excessive worry or panic attacks
Mania: Denies periods of decreased need for sleep or increased goal-directed activity, grandiosity, euphoria
Psychosis: Denies hearing or seeing things that are not there
Trauma: + intrusive memories, flashbacks, nightmares, irritable, lacks trust, hypervigilant, avoidant behavior

OBJECTIVE:
MSE:
Appearance: appears stated age, fair grooming
Attitude: cooperative
Behavior: good eye contact, no psychomotor agitation or retardation
Mood: anxious
Affect: restricted
Speech: clear, normal rate/tone
Thought content: no SI/HI/AVH
Thought Process: logical, goal-directed, future orientated
Cognition: intact, AOx4, good concentration
Insight: fair
Judgment: fair

Risk Assessment:
Patient denies current suicidal or homicidal ideation, intent, method or plan. Suicide precautions do not appear to be necessary for this patient at this time.

Assessment/medical decision making:
Tolerating current medication regimen well without issues. We discussed treatment options and will increase the dose of Prazosin to aid in symptom reduction.

Plan:
-Increase Prazosin to 2mg QHS
-Reviewed risks, benefits, indication, side effect profile, and alternative of above recommendations

**State of Indiana**
**Department of Correction**

Division of Medical and Clinical Healthcare Services
Indiana Government Center South
302 W. Washington Street
Indianapolis, IN 46204

**Facility: ISR**

| | |
|---|---|
| PATIENT: | CARLTON WRIGHT |
| DATE OF BIRTH: | 09/10/1984 |
| DOC #: | 208902 |
| DATE: | 11/01/2022 6:24 PM |
| VISIT TYPE: | Medication Management without Psychotherapy |

## Psychopharm

### Individuals Present

Contact type: Onsite

Exhibit #48

Individual present

Support Resources

| Full Name | Relationship | Home Phone | Work Phone | Effective Date | End Date | Comments |
|---|---|---|---|---|---|---|

### Prescriber's Evaluation

Patient is a 38 year old black male with past psychiatric history of PTSD who was seen and assessed for medication management follow-up. He was last seen on 9/1/2022 and that time Prazosin was increased by adding 1mg QAM and 2mg QHS was continued.

Patient staffed in a multidisciplinary approach. History obtained from patient, team, and EHR.

HPI: Upon assessment, patient reports to be doing pretty good. His floor is covered with food items from commissary that he just received today. Notes his mind is staying good. His sleep continues to get better with less nightmares. Ongoing struggles to trust staff due to incident that happened to him when he was in PC at NCF. Appetite is intact. Notes he eats to "cope", but also watches TV and does what works out he can in his cell. He denies any SI/HI or self harm. No psychosis. Has good family support. He is without complaints at this time.

Incarcerated since: 2009
Tentative release: 2034

History of drug/alcohol use: hx of etoh, marijuana
Current drug/alcohol use: denies

Carlton Wright # 208902
Pendleton Corr. Fac.
4490 W. Reformatory Rd
Pendleton, I.N. 46064

CERTIFIED MAIL

9589 0710 5270 2079 3011 15

US POSTAGE PITNEY BOWES
CORRECTION
ZIP 46064 $ 014.30⁰
02 7W
0008036527 MAY 23 2025

FILED
MAY 27 2025
U.S. DISTRICT COURT
INDIANAPOLIS, INDIANA

The Office of The
Clerk of the US District Court
105 U.S. Courthouse
46 East Ohio Street
Indianapolis, I.N. 46204

Legal Mail

PENDLETON CORR. FACILITY
LAW LIBRARY
LEGAL MAIL ONLY