UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CARLTON WRIGHT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:23-cv-00459-TWP-MKK |
| | ) |
| JAMA JONES, | ) |
| SHANE NELSON, | ) |
| CECIL, | ) |
| KRUL, | ) |
| GARD, | ) |
| SAYE, | ) |
| LEE, | ) |
| FOLEY, | ) |
| B. LEACH, | ) |
| DUNLAP, | ) |
| MYERS, | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on a Motion for Summary Judgment filed by Defendants Shane Nelson ("Mr. Nelson"), Glenda Cecil ("Mrs. Cecil"), Michael Krul ("Lieutenant Krul"), Voyle Gard ("Captain Gard"), Alassane Seye ("Sergeant Seye"),[1] Joe Lee (Sergeant Lee"), B. Lech (Officer Leach)[2], Lashawna Dunlap ("Officer Dunlap") and Jeff Myers ("Officer Myers") (collectively the "Defendants"). (Dkt. 76). *Pro se* Plaintiff Carlton Wright, who is incarcerated by the Indiana Department of Correction, filed this lawsuit based on two assaults he experienced when he was housed at New Castle Correctional Facility ("NCCF"). He alleges that Defendants failed

---

[1] The **clerk is directed** to update the docket to reflect that the correct name of the Defendant identified as "Saye" is "Alassane Seye".
[2] Mr. Wright has agreed not to proceed on his claims against Officer Leach. (Dkt. 85 at 5).

1

to protect him from these assaults and that Mr. Nelson retaliated against him. For the reasons below, that motion is **granted in part and denied in part**.

## I. STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II.  FACTUAL BACKGROUND

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Wright, the non-moving party and draws all reasonable inferences in that party's favor. *Khungar*, 985 F.3d at 572–73.

### A. The Parties

Mr. Wright arrived at NCCF's M-unit on November 18, 2020. (Dkt. 28 at 9 ¶ 5).

Mr. Nelson worked as a Unit Team Manager ("UTM") at NCCF during the relevant time. Dkt. 78-1 ¶ 2, 4 (Nelson Aff.). As a UTM, Mr. Nelson has the authority to stop bed moves and his approval is part of the process in determining housing placement. (Dkt. 86 at 45) (Nelson Interrogatories). Bed moves are typically assigned by the case managers and approved by the UTM. *Id.* at 44.

Officer Myers, Officer Dunlap, and Sergeant Lee worked as Correctional Officers at NCCF. Dkt. 78-4 ¶ 2, 4 (Myers Aff.); dkt. 78-5 ¶ 2,4 (Dunlap Aff.); dkt. 78-7 ¶ 2, 3 (Lee Aff.). Sergeant Seye , Captain Gard and Lieutenant Krul worked at NCCF in their respective positions. Mrs. Cecil worked as a Classification Officer. Dkt. 78-6 ¶ 2, 4 (Cecil Aff.). Mrs. Cecil was not aware of any threats against Mr. Wright. *Id.* ¶ 6. In addition, Mrs. Cecil was not involved in bed assignments and instead does facility assignments. *Id.* ¶ 12.

### B. Mr. Wright's Housing Moves

After Mr. Wright's arrival, Mr. Nelson began changing his housing assignment very frequently, so Mr. Wright began filing grievances about the moves. Dkt. 28 at 9 ¶ 5, 10 ¶ 9 (Sworn Complaint). On January 6, 2021, Mr. Nelson chastised Mr. Wright, telling him, "If I was you (the Plaintiff) I would stop bitching and complaining about bed moves and telling me how to do my

3

job, or I promise you, I will make your stay back here (M-Unit) rough on you." Dkt. 86 at 41 (Brown Aff.).

On January 13, 2021, Mr. Wright was moved to cell M1-206. Dkt. 28 at 13 ¶ 13. Mr. Wright and his new cellmate got along well together. *Id.* Nonetheless, on April 5, 2021, Mr. Nelson approved Mr. Wright's move from cell M1-206 to M1-116. Dkt. 28 at 13 ¶ 14; dkt. 86 at 30 (Location History). Mr. Wright did not request this move. Dkt. 28 at 13 ¶ 15. At the time, the other prisoner in cell M1-116, Mr. Dorsey, was known to be dangerous. *Id.* at 14 ¶ 16. Later that day, Mr. Wright contacted Sergeant Turley, and Sergeant Turley reassigned him to a different pod. Dkt. 86 at 30; dkt. 28 at 19 ¶ 25. A few days later, Mr. Wright spoke to Mr. Nelson about his fear of Mr. Dorsey, and Mr. Nelson told him not to worry. Dkt. 28 at 20 ¶ 27. Nonetheless, on June 1, Mr. Nelson authorized Mr. Wright's move into a cell on the same pod and the same recreation line as Mr. Dorsey. Dkt. 86 at 30.

The next day, Mr. Dorsey attacked Mr. Wright on the recreation pad for 37 minutes. Dkt. 28 at 26 ¶ 39. The floor officers working that day were Lieutenant Krul, Sergeant Seye, Officer Meyers, and Officer Dunlap. Dkt. 28 at 27 ¶ 41. According to policy, these officers were supposed to make rounds every 30 minutes but none of them intervened in the fight. *Id.* at 28. Mr. Wright filed a grievance against Mr. Nelson based on this assault. *Id.* at 29 ¶ 49.

After the attack from Mr. Dorsey, Mr. Wright was taken to segregation and placed in a cell next to an inmate named Mr. Brooks. Dkt. 86 at 9 ¶ 7, 9. This placement was authorized by Lieutenant Krul. Dkt. 86 at 30. Mr. Wright was a protective custody inmate and was supposed to be kept separate from general population inmates, while Mr. Brooks was a general population inmate. Dkt. 86 at 9 ¶ 10, 11 ¶ 14. Mr. Wright was placed in segregation after the fight with Mr. Dorsey. The report of disciplinary hearing, held on June 16, and signed approved on June 18, 2021,

4

indicates that Mr. Wright was sentenced to "time served." Dkt. 86 at 32. But Mr. Wright was not released from segregation until June 29. Dkt. 78-1 ¶ 22. The form approving his continued stay there was filled out by Mr. Nelson. Dkt. 86 at 76.

While in segregation, Mr. Wright notified Captain Gard, Sergeant Lee, Lieutenant Krul, and Mr. Nelson that Mr. Brooks had threatened him. Dkt. 86 at 13 ¶ 24, 14 ¶ 27, 15 ¶ 30, 16 ¶ 32. In addition, Captain Gard heard Mr. Brooks threaten to harm Mr. Wright. *Id.* at 14 ¶ 25. Mr. Brooks also threatened Mr. Wright while Sergeant Lee was escorting him to the shower. *Id.* at 14-15 ¶ 28. Mr. Wright asked to be moved but Captain Gard, Sergeant Lee, Lieutenant Krul, and Mr. Nelson denied this request. *Id.* at 14 ¶ 25, 15 ¶ 31, 15 ¶ 32.

On the day Mr. Brooks assaulted Mr. Wright, Captain Gard and Sergeant Lee saw that Mr. Brooks was holding his cuff port open. *Id.* at 16-17 ¶ 35. Later, when Officer Foley was escorting Mr. Wright for his rec/shower time, Mr. Brooks assaulted Mr. Wright through the cuffport with bodily fluids. Dkt. 86 at 18 ¶ 41.

### III. DISCUSSION

Mr. Wright brings Eighth Amendment failure protect claims based on the assaults by Mr. Dorsey and Mr. Brooks and First Amendment retaliation claims against Mr. Nelson.

#### A. Failure to Protect Claims

Prison officials have a duty to protect inmates from violent assaults by other inmates. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Officials incur liability for the breach of that duty when they are "aware of a substantial risk of serious injury to [an inmate] but nevertheless fail to take appropriate steps to protect him from a known danger." *Guzman v. Sheahan*, 495 F.3d 852, 857 (7th Cir. 2007) (quoting *Butera v. Cottey*, 285 F.3d 601, 605 (7th Cir. 2002)); *see also Santiago v. Walls*, 599 F.3d 749, 758–59 (7th Cir. 2010). To succeed on a claim for failure to

protect, Mr. Wright must show that (1) Defendants were aware of a substantial risk of serious injury to him, and (2) they acted with deliberate indifference to that risk. *See Farmer*, 511 U.S. at 834, 837; *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008). An official will only be liable when he disregards that risk by failing to take reasonable measures to abate it. *Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006). Further, damages are unavailable for fear of an unrealized attack. *Babcock v. White*, 102 F.3d 267, 270 (7th Cir. 1996).

### 1. Assault by Mr. Dorsey

Mr. Wright brings two distinct failure-to-protect claims regarding the assault by Mr. Dorsey: the claim that Mr. Nelson knew that Mr. Dorsey was a risk to him but placed him in the same pod anyway and the claim that Lieutenant Krul, Sergeant Seye, Officer Myers, and Officer Dunlap failed to stop the fight once it started.

As to the claim against Mr. Nelson, there is a dispute of fact regarding whether Mr. Nelson was aware of a risk that Mr. Dorsey would assault Mr. Wright. Specifically, Mr. Nelson contends that he was not aware of any risk. Dkt. 78-1 ¶ 6. But Mr. Wright has designated evidence that he notified Mr. Nelson that Mr. Dorsey had threatened him. *Id.* at 20 ¶ 27. Because there is a dispute of fact on this issue, Mr. Nelson is not entitled to summary judgment on this claim.

There are no disputes of material fact, however, as to the claim against Lieutenant Krul, Sergeant Seye, Officer Myers, and Officer Dunlap. Mr. Wright bases this claim on his contention that these defendants were the floor officers at the time of his altercation with Mr. Dorsey and failed to make their rounds. *See* dkt. 85 at 50. But each of these defendants denies knowledge of any altercation or risk to Mr. Wright. Dkt. 78-4 ¶ 8; dkt. 78-5 ¶ 8; dkt. 78-10 ¶ 8; dkt. 78-11 ¶ 8. And Mr. Wright does not otherwise designate evidence that these officers were aware of a risk that Mr. Dorsey would assault him that day.

The duty under the Eighth Amendment to protect a prisoner from assault "does not lead to absolute liability." *Duane v. Lane*, 959 F.2d 673, 676 (7th Cir. 1992) (quoting *McGill v. Duckworth*, 944 F.2d 344, 347 (7th Cir. 1991)). Rather, under the Eighth Amendment, the officials must "want[ ] harm to come to the prisoner," or, at least, must possess "total unconcern for a prisoner's welfare" in the face of "serious risks." *Id.* Thus, a prisoner must show, at the least, "recklessness," which, for purposes of the Eighth Amendment, entails "actual knowledge of impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Id.* (quoting *Duckworth v. Franzen,* 780 F.2d 645, 653 (7th Cir. 1985)). A prisoner who merely establishes negligence but does not show either actual knowledge of the danger, or danger objectively so great that actual knowledge of the danger can be inferred, cannot prevail. *Id.* Thus, the failure to make rounds, standing alone, is not enough to establish deliberate indifference. *Strong v. Campanella*, No. 17-CV-0417-SMY, 2017 WL 2656586, at *2 (S.D. Ill. June 20, 2017) (citing *Rice ex rel. Rice v. Correctional Medical Services*, 675 F.3d 650, 679-80 (7th Cir. 2012)). Mr. Wright argues that these defendants failed to follow IDOC policy on conducting rounds, but violations of IDOC policy are not constitutional violations. *See Estate of Simpson v. Gorbett*, 863 F.3d 740, 746 (7th Cir. 2017) ("Section 1983 protects against constitutional violations, not violations of departmental regulation and practices.").

Because Mr. Wright has not designated evidence that these defendants were aware of the fight, they are entitled to summary judgment on this claim.

### 2. Assault by Mr. Brooks

Mr. Wright brings Eighth Amendment failure-to-protect claims based on the assault by Mr. Brooks; against Lieutenant Krul, Mr. Nelson, Mrs. Cecil, Sergeant Lee, and Captain Gard.

It is undisputed that Mrs. Cecil did not fail to protect Mr. Wright from assault by Mr. Brooks. Mrs. Cecil affirms that she was not aware of a threat to Mr. Wright and that she is not involved in bed moves. Dkt. 78-6 ¶ 6, 12. Mr. Wright contends that, as a Classification Officer, she should have been automatically altered to an issue with placing Mr. Wright near Mr. Brooks. But he has not designated specific evidence that would allow a trier of fact to conclude that she was aware of any such issue and disregarded it. Ms. Cecil is therefore entitled to summary judgment.

There is an issue of fact, however, regarding whether Lieutenant Krul, Mr. Nelson, Sergeant Lee, and Captain Gard failed to protect Mr. Wright from the assault by Mr. Brooks. These defendants deny knowledge that Mr. Brooks would assault Mr. Wright. Dkt. 78-1 ¶ 19 (Nelson); dkt. 78-6 ¶ 8-9 (Cecil); dkt. 78-7 ¶ 9-10 (Lee); dkt. 78-9 ¶ 9-10 (Gard); dkt. 78-11 ¶ 18 (Krul). Mr. Wright has affirmed to the contrary, stating that he notified Captain Gard, Sergeant Lee, Lieutenant Krul, and Mr. Nelson that Mr. Brooks had threatened him and that Captain Gard and Sergeant Lee heard Mr. Brooks threaten Mr. Wright. Dkt. 86-1 ¶ 24-28, 30, 32. Mr. Wright also notified Lieutenant Krul and Mr. Nelson on several occasions that Mr. Brooks had threatened him. *Id.* ¶ 30, 32. Mr. Wright asked to be moved but Captain Gard, Sergeant Lee, Lieutenant Krul, and Mr. Nelson denied this request. *Id.* ¶ 26, 29, 3133.

Mr. Nelson and Lieutenant Krul further deny any role or say in Mr. Wright's placement in the segregation unit. Dkt. 78-1 ¶ 17-18 (Nelson); dkt. 78-11 ¶ 19 (Krul). But Mr. Wright has designated evidence that Mr. Nelson did have authority over prisoner placement, dkt. 86 at 44, and that Lieutenant Krul authorized this placement, dkt. 86 at 30. This is enough to raise a question of fact on this issue.

8

Because there are questions of material fact regarding whether Lieutenant Krul, Mr. Nelson, Sergeant Lee, and Captain Gard failed to protect Mr. Wright from the assault by Mr. Brooks, they are not entitled to summary judgment on this claim.

### B. Retaliation

To succeed on a First Amendment retaliation claim, a plaintiff must come forward with evidence sufficient to allow a reasonable jury to conclude that: (1) the plaintiff engaged in protected First Amendment activity; (2) he suffered a deprivation that would likely deter future First Amendment activity; and (3) the protected activity was a motivating factor in the defendants' decision to take the allegedly retaliatory action. *Taylor v. Van Lanen*, 27 F.4th 1280, 1284 (7th Cir. 2022). If he does so, the burden shifts to the defendants to show that the deprivation would have occurred even if he had not engaged in protected activity. *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020). If they can make that showing, the burden shifts back to the plaintiff to demonstrate that the proffered reason is pretextual or dishonest. *Id.*

### A. Protected First Amendment Activity

Mr. Wright bases his retaliation claim on two retaliatory acts – the placement near Mr. Dorsey and his being held in segregation beyond the time ordered in his disciplinary hearing. Mr. Nelson does not dispute that Mr. Wright engaged in protected First Amendment activity before his placement near Mr. Dorsey or that the assault by Mr. Dorsey would deter a person of ordinary firmness from engaging in speech. But he argues that there is no evidence that he filed additional grievances before Mr. Wright was kept in segregation. Because there is no dispute that Mr. Wright did file grievances against Mr. Nelson, there is enough evidence to allow a conclusion that the first element of Mr. Wright's retaliation claim is satisfied. The timing question posed by Mr. Nelson implicates the "motivating factor" prong, not the "protected activity" prong.

## B. Adverse Action

Next, Mr. Nelson does not dispute that the assault by Mr. Dorsey satisfies the second element of a retaliation claim, but he argues that Mr. Wright's stay in segregation beyond the allotted time does not. To the extent that Mr. Wright can be understood to contend that these two incidents combined amount to retaliation, a reasonable jury could conclude that being placed near an inmate who is known to be dangerous plus the additional time in segregation amount to a deprivation that would deter a person of ordinary firmness from participating in First Amendment activity. Moreover, even if the two allegedly retaliatory events are viewed separately, it is undisputed that Mr. Wright was kept in segregation about two weeks beyond the time provided in his disciplinary hearing report. Mr. Nelson argues that this brief period is common and "is a natural result of the penological and administrative process when housing inmates…." *Id.* ¶ 23. Mr. Nelson thus suggests that this is not long enough to amount to an adverse action. But time in segregation can be found to be a deprivation that would deter a person of ordinary firmness from participating in First Amendment activity. *See Jackson v. Thurmer*, 748 F. Supp. 2d 990, 1003 (W.D. Wis. 2010) (forty-five days in disciplinary segregation sufficient injury to state First Amendment retaliation claim); *Porter v. Dittman,* No. 18-CV-138-WMC, 2019 WL 6529974, at *5 (W.D. Wis. Dec. 4, 2019) (43 days in disciplinary segregation sufficiently adverse).

## C. Motivating Factor

Finally, Mr. Nelson argues that Mr. Wright cannot show that these actions were motivated by Mr. Wright's filing of grievances. As an initial matter, Mr. Nelson contends that he did not know of any risk to Mr. Wright posed by Mr. Dorsey and therefore there is no evidence that he failed to protect him from Mr. Dorsey for retaliatory reasons. Dkt. 78-1 ¶ 6. But, as discussed above, Mr. Wright has designated evidence that he reported to Mr. Nelson his fear of Mr. Dorsey.

*Id.* at 20 ¶ 27. Mr. Nelson also argues that there is no evidence that he had any say over Mr. Wright's stay in segregation, explaining that decisions about where inmates are housed are made by administrators at NCCF and IDOC. Dkt. 78-1 ¶ 20. But Mr. Wright has designated evidence that Mr. Nelson, as a part of the review committee, participated in keeping Mr. Wright on administrative hold in the segregation unit. Dkt. 86 at 76. Thus, a reasonable jury could conclude that Mr. Nelson was at least partially responsible for the length of time Mr. Wright spent in segregation.

The remaining issue is whether there is enough evidence to allow a reasonable jury to conclude that Mr. Nelson acted as his did because he had a retaliatory motive. "The motivating factor [element] amounts to a causal link between the activity and the unlawful retaliation." *Manuel*, 966 F.3d at 680. This element may be proven by circumstantial evidence, which may include suspicious timing; ambiguous statements, behavior, or comments directed at others in the protected group; evidence that similarly situated people were treated differently; and evidence that the decisionmaker offered a pretextual reason for an allegedly retaliatory action. *Id.*; *Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 643–44 (7th Cir. 2013); *cf. Nieves v. Bartlett*, 139 S. Ct. 1715, 1727 (2019) (probable cause usually defeats retaliatory arrest claim but not if plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals who did not engage in the same sort of protected speech were not). Mr. Wright has designated evidence that Mr. Nelson told him that if he did not stop complaining, he would make Mr. Wright's time in the M-Unit difficult. Dkt. 86 at 41. The adverse actions in question both occurred after Mr. Nelson allegedly made that statement. That is direct evidence of a retaliatory motivation, and a reasonable jury, believing Mr. Wright's version of events, could conclude that Mr. Nelson took adverse actions against him because he filed grievances.

There are therefore several disputes of material facts regarding whether Mr. Nelson had Mr. Wright placed near Mr. Dorsey despite knowing about Mr. Wright's fear of Mr. Dorsey and whether Mr. Nelson played a role in keeping Mr. Wright in segregation beyond the time he should have been there and whether Mr. Nelson did so because Mr. Wright had filed grievances. Mr. Nelson therefore is not entitled to summary judgment on Mr. Wright's retaliation claim.

## IV. CONCLUSION

The Defendants' motion for summary judgment, Dkt. [76], is **GRANTED IN PART AND DENIED IN PART**. Summary judgment is **granted** for Lieutenant Krul, Sergeant Seye, Officer Myers, and Officer Dunlap on the claim that they failed to intervene in the fight between Mr. Dorsey and Mr. Wright. Mrs. Cecil is **granted** summary judgment on Mr. Wright's failure-to-protect claim against her.

Mr. Wright's failure-to-protect claim based on the assault by Mr. Dorsey against Mr. Nelson and his failure-to-protect claim against Lieutenant Krul, Mr. Nelson, Sergeant Lee, and Captain Gard based on the assault by Mr. Brooks remain. In addition, his retaliation claims against Mr. Nelson remain. Summary judgment is **denied** on these claims.

The **clerk shall terminate** Breanna Leach, Glenda Cecil, Jeff Myers, Lashawna Dunlap, Joe Lee, and Voyle Gard as defendants.

The **clerk is also directed** to update the docket to reflect that the correct name of the Defendant identified as "Saye" is "Alassane Seye."

Further, Court notes that the Marshal Service attempted to serve Jama Jones and Officer Foley without success. The Court finds that these efforts, although unsuccessful, were reasonable and sufficient. Mr. Wright shall therefore have through **December 30, 2025**, to show why the claims against them should not be dismissed without prejudice.

The Court prefers that Mr. Wright be represented by counsel for the remainder of this action. The **clerk is directed** to send Mr. Wright a motion for assistance recruiting counsel with his copy of this Order. Mr. Wright shall have **through December 30, 2025**, to file a motion for counsel using this form motion or to inform the Court that he wishes to proceed *pro se*. Once the motion has been ruled on and counsel has been recruited, the magistrate judge is asked to schedule a telephonic status conference to discuss further proceedings.

**IT IS SO ORDERED.**

Date: 12/12/2025

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

CARLTON WRIGHT
208902
WESTVILLE - CF
WESTVILLE CORRECTIONAL FACILITY
Inmate Mail/Parcels
5501 South 1100 West
WESTVILLE, IN 46391

Joseph Thomas Lipps
BBFCS ATTORNEYS
jlipps@bbfcslaw.com